Gilmartin *v.* The Mayor &c. of New York.

————— • •·• —————

GILMARTIN *vs.* THE MAYOR &c. OF THE CITY OF NEW YORK.

If a servant does, without special orders, an act of such a nature that he is justified in doing it, as between him and his master, without an express order, the master is liable for damages sustained by an individual in consequence of the act being done in an unskillful manner.

Thus where the defendants' gardener, in attempting to take down a liberty pole, in a public park, which had become dangerous, did it so unskillfully that it was precipitated against a telegraph pole which was thereby broken off and cast against the plaintiff's daughter, causing her death; *Held* that the defendants were liable, although the gardener had received no express orders to remove the pole, from the officer having charge of the public parks.

APPEAL by the defendants from a judgment entered at a special term on the verdict of a jury.

The action was brought to recover damages for loss of services, and expenses, occasioned by the death of the plaintiff's daughter, a minor, under the following circum-

stances: She was passing along Broadway, on the 27th of June, 1865, at the time when a pole or flag-staff standing in the city hall park was being cut or pulled down. It was claimed by the plaintiff that several of the officers of the defendants, who were charged with the care of the park, were present and assisted in taking down the pole. The pole fell against the telegraph wire, and thereby a telegraph pole, situated at the corner of Murray street and Broadway, was pulled over and fell upon her, causing injury, of which she afterward died. The testimony was that the pole was cut down by men and boys, after working hours; that Michael Reilly, a gardener, employed by the defendants, had "something to do with it." That the keeper of the park, Donohue, had not received or given any order for the removal of the pole. That no order for its removal had been given by the superintendent of lands and places, whose duty it would have been to have ordered such removal, if it had been desired. That it was no part of the duty of Reilly, the gardener, to undertake the removal of the pole. It also appears that the telegraph pole was maintained and controlled by the Metropolitan Police Department; that it was rotten at the base where it broke off. The action was tried by a jury. It was admitted by the defendants' counsel, on the trial, that the defendants, on the 27th day of June, 1865, were the owners of the city hall park, in the city of New York, and in possession thereof. And it was consented that the plaintiff might read in evidence, on his behalf, the ordinances of the defendants, as published by them, relevant to the issues herein; subject, however, to any objections the defendants might make as to relevancy or otherwise.

The plaintiff's counsel then read in evidence an extract from the ordinances of the city corporation, specifying the duties of the superintendent of public parks and places, passed May 20, 1849, (chapter 5, section 29,) as follows: "An ordinance organizing the departments of the munici-

pal government of the city of New York, and prescribing their powers and duties. (Approved May 20, 1849.)

Chapter V, section 29. This bureau, the chief officer of which shall be called the superintendent of lands and places, is charged with the duty of inspecting the condition of, and superintending the public grounds and places belonging to the corporation.

§ 71. He shall exercise a constant inspection and supervision of the public grounds and parks, and of keeping the same in proper order, and shall, from time to time, suggest and report to the street commissioner such improvements therein as may be necessary and proper, with estimate of the expense thereof.

§ 76. May appoint a foreman (amended January 7, 1865) and two keepers of the city hall park at three dollars per day, and may employ, from time to time, such additional labor as may be necessary to keep the public grounds and parks in proper order." (*Revised Ordinances, approved December* 19, 1862.)

When the plaintiff rested, the defendants' counsel moved to dismiss the complaint, upon the ground that the action was brought to recover against the corporation for the negligence of its officers, employees or agents, in negligently performing its duty in removing from the premises the stick of timber or pole theretofore erected; and that to establish the right of the plaintiff to recover, it must be shown affirmatively that this was done by one of the employees or agents of the city government; and that there was no testimony to that effect, except that of Mr. Donohue, the keeper of the city hall park, who stated that one Edward Reilly, the gardener, was at or about this pole; that in the same testimony it was shown that he, Donohue, was duly appointed by the street commissioner, keeper of the city hall park, and that he had men in his charge to take care of the grounds, and that no order had been received by him from Mr. Ward, the superintendent

of lands and places, to remove this liberty pole, nor had he, Donohue, given any order of that kind to any person who was under his charge. The motion was denied, and the defendants excepted.

The defendants also requested the court to charge that if the jury believed the telegraph pole would not have fallen except from the fact of its being unsound, then the plaintiff could not recover. The court denied the request, and exception was taken. The defendants further requested the court to charge that the cutting down a liberty pole was not a repair such as Reilly might, without any specific direction, cause to be done. The court denied the request, and exception was taken. The jury found a verdict in favor of the plaintiff, for $1100.

*Richard O'Gorman* and *John K. Hackett*, for the appellants. I. The motion to dismiss the complaint should have been granted. 1. It was incumbent upon the plaintiff to establish affirmatively that the removal of the liberty pole was done by the corporation, through its officers. There is no such proof in the case. It is proven that "men and boys" were engaged in pulling it down. That it was done after "working hours." The only testimony tending to connect any officer of the city with the occurrence is, that Michael Reilly, gardener of the park, had "something to do with it." What that something was, whether he directed the removal, or remonstrated against it, does not appear. It is therefore submitted, that this testimony is entirely insufficient to connect the corporation with the occurrence. 2. But if it be conceded that Reilly directed the removal of the liberty pole, the corporation is not liable. (*a.*) Because the removal of the pole was not within the scope of Reilly's duties as gardener. This fact is proven affirmatively by the testimony of Ward, the superintendent of lands and places, and of Donohue, the keeper of the park. (*b.*) Because he was

not directed to remove the pole by the defendants. Mr. Ward, the only person from whom such an order could properly issue to him, testifies that no such order was issued. (*c.*) It also appears that the removal of the pole was done "after working hours," at a time when the corporation had ceased to control or direct the occupation of their employees. The negligence by which the plaintiff suffered was therefore committed by Reilly while engaged in an employment not authorized or directed by the defendants. A corporation is liable for a tortious act committed by an agent pursuant to its direction in relation to matters within the scope of its powers; but not for any unauthorized act of its officers, though done *colore officii.* (*Angell & Ames on Corporations*, 250, 330. *Boom* v. *City of Utica*, 2 *Barb.* 104. *Mayor* v. *Cunliff*, 2 *N. Y. Rep.* 165.) 3. The unsoundness of the telegraph pole was the immediate cause of the injury suffered. The falling of the liberty pole was the remote cause. "*In jure non remota causa sed proxima spectatur.*" (*Brown's Legal Maxims*, 202.) Lord Bacon says: "It were infinite for the law to judge the cause of causes and their impulsions one of another: therefore it contenteth itself with the immediate cause without looking to any further degree." (*Bac. Max. Reg.* 1. *Burrill's Law Dic.* "*Causa.*" 3 *Barr's Rep.* 470. 6 *Adol. & Ellis*, 75. 11 *John.* 15.)

*Joseph M. Pray*, for the respondent. I. The motion to dismiss the complaint, when the plaintiff rested, was properly denied. 1. There was evidence sufficient to sustain a verdict that the defendants had caused the injury complained of, and that it occurred through their negligence. (*a.*) The defendants had charge of the public park. It was under their exclusive control, and all improvements and repairs therein could only be carried on and all obstructions removed by their authority. (*Wendell* v. *The Mayor &c. of Troy*, 39 *Barb.* 329. *Conrad* v. *Trustees of Ithaca*, 16

*N. Y. Rep.* 159, *and note. Hickok* v. *Trustees of Village of Plattsburgh, Id. Barton* v. *City of Syracuse,* 36 *id.* 54. *See Ordinance, fol.* 84.) They were bound to remove the pole if it became dangerous to human life, and to remove it with proper safeguards. (*Austin* v. *H. R. R. Co.,* 25 *N. Y. Rep.* 334. *Conrad* v. *Trustees of Ithaca,* 16 *id.* 159. *Grant* v. *City of Brooklyn,* 41 *Barb.* 381.) (*b.*) The testimony shows satisfactorily that they were acting, in so doing, by their usual agents. Michael Reilly, the gardener, was engaged about it; James Donohue, park-keeper, was present and advising. (*Drew* v. *The Sixth Avenue Railroad,* 26 *N. Y. Rep.* 49. *Devin* v. *Patchin, Id.* 441.) (*c.*) But they carelessly and negligently allowed a crowd of men and boys to pull the rope, apparently for sport, and, without paying attention to the wire, they pulled the rope towards it. In so doing, they not only pulled down the wire belonging to the city, crossing the park, but also thereby pulled down the pole to which the wire was attached on Murray street, and caused it to fall upon the deceased. (*Cases above cited. Benson* v. *Suarez,* 19 *Abb.* 61. *Althorf* v. *Wolf,* 22 *N. Y. Rep.* 355.)

II. The motion to dismiss the complaint at the close of the testimony, was properly denied. 1. The defendants' responsibility was then clearer than before. 2. The proof of the falling of the liberty pole upon the wire, is sufficient and satisfactory. 3. There was at least evidence tending to prove material portions of the plaintiff's case, and therefore the case was properly sent to the jury. (*Mallory* v. *The Tioga Railroad Co.,* 1 *Transcript Appeals,* 204. *Ernst* v. *Hudson River Railroad Co.,* 35 *N. Y. Rep.* 35, 40. *Cook* v. *N. Y. Central Railroad Co.,* 3 *Trans. Appeals,* 8. *Wolfkiel* v. *Sixth Avenue Railroad,* 5 *id.* 219. *Van Rensselaer* v. *Jewett,* 2 *N. Y. Rep.* 135.)

III. The condition of the telegraph pole does not affect the case; especially, as by the defendants' testimony it belonged to them; and the court properly refused to charge

as requested by the defendants' counsel. 2. The court properly refused to charge as requested by the defendants, in reference to cutting down the liberty pole. (*a.*) The defendants were required to see that the pole was removed in a proper manner, and under proper superintendence. (*See Ordinances, fol.* 84; *Davenport* v. *Ruckman, &c.,* 37 *N. Y. Rep.* 568; *Barton* v. *City of Syracuse,* 36 *id.* 54; *Grant* v. *City of Brooklyn,* 41 *Barb.* 381; *Hyatt* v. *Trustees of Rondout,* 44 *id.* 385.) (*b.*) The defendants are responsible for the act of Reilly, if they allowed him to cut the pole down. (*Althorf* v. *Wolf,* 25 *N. Y. Rep.* 355.)

IV. The damages found by the jury were not excessive, and were sustained by the evidence; and no objection was taken at the trial as to the sufficiency of the evidence on the question of damages. (*Drew* v. *Sixth Avenue Railroad,* 26 *N. Y. Rep.* 49.)

V. No exception was taken to the charge of the court, and no other requests to charge were made by the defendants. Without such requests and exception, the defendants are to be deemed to have acquiesced in the charge. (*Cook* v. *N. Y. Cent. Railroad,* 3 *Trans. Appeals,* 11. *Mallory* v. *Tioga Railroad,* 1 *id.* 204. *Winchell* v. *Hicks,* 18 *N. Y. Rep.* 558. *The People* v. *Cook,* 8 *id.* 78.)

VI. All the other objections taken at the trial were properly overruled.

VII. The appeal is taken from the judgment only, and not from the decision on the motion for a new trial, and the verdict, therefore, cannot be disturbed upon the ground that it is against the weight of evidence.

*By the Court,* GEO. G. BARNARD, J. The defendants had sole charge of the city hall park, and were bound to so manage it that life should be protected. If the pole, the removal of which caused the injury to the plaintiff's daughter, was dangerous, the defendants were bound to

remove it. If for any reason the defendants wished its removal, they had the power to remove it. In any case, they were bound to remove it carefully. The defendants' gardener, on removing it, did it so unskillfully that it was precipitated against a telegraph pole, which was thereby broken off and cast against the plaintiff's daughter, causing her death. The pole which was removed had been put up for a specific purpose, which had ceased to exist, and it appears to have been dangerous, as it broke into pieces in falling. Under these circumstances, the gardener was justified in the removal, as to the defendants, without an express order, and this would make the defendants liable if the act was unskillfully done. (*Harlow* v. *Humiston*, 6 *Cowen*, 189.)

It is entirely immaterial whether the injury was caused by the liberty pole, directly, or by the telegraph pole being driven by the liberty pole. It was the unskillful removal of the liberty pole which caused the injury.

Judgment affirmed, with costs.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Geo. G. Barnard* and *Cardozo,* Justices.]