Hall *v.* Warner.

———————— •❖• ————————

## HALL *vs.* WARNER.

The hirer of anything is responsible for that degree of diligence which all prudent men use in keeping their own goods of the same kind. He is not only liable for his own personal default, but also for that of his servants, and persons employed by him.

An innkeeper, or the servant of an innkeeper, is not presumed to possess any peculiar learning or skill not accessible to other persons, which authorizes the hirer of a horse to commit the proper feeding, or harnessing, of the horse to him, without responsibility for his acts or neglects.

Thus, where the hirer of a horse stopped at an inn, and ordered the horse to be put into the barn, and fed, and owing to the neglect of the hostler to put the bits in the horse's mouth, on bringing him up, the horse was unmanageable, and ran away, damaging himself, the buggy and harness; *Held* that the hirer of the horse was liable to the owner, for the damage occasioned by the negligence of the hostler.

APPEAL from a judgment in favor of the defendant, rendered on a verdict at the Wayne circuit. The action was brought to recover damages for injuries to the

plaintiff's horse, harness and carriage, by reason of the defendant's negligence.

*E. G. Lampham,* for the appellant.

The judge, on the trial, erred in the several instructions excepted to, on the question of the defendant's negligence. 1. A bailee for hire is responsible for want of ordinary care. He is liable for his own neglect and the neglect of his agents and servants. (*Story on Bailm.* § 400. *Bell's Com.* 455, *5th ed.*) The landlord and his men, or employees, were the servants of the defendant, and responsible to him. The plaintiff had no right of action against the landlord, during the bailment. (*Edwards on Bailm.* 321. 7 *Dana,* 245. 8 *John.* 432.) The defendant had such right, and the right of a guest. (*Edwards, above cited.* 7 *Ala.* 717. *Story on Bailm.* § 394. *Coykendall* v. *Eaton,* 37 *How.* 438.) The learned judge based his ruling on this point on a case cited from 3 *Campbell,* 4. No doubt was entertained in that case about the defendant's liability, and what is said, in the opinion, about the effect of a mistake of a farrier, had the defendant employed one, is entirely *obiter.* (*See also Paley's Agency,* 296; *Bush* v. *Steinman,* 1 *Bos. & Pul.* 409.) 2. So the instruction that the defendant was under no obligation to examine and see whether the horse was properly harnessed, and was not liable, unless he knew he was not so harnessed, was erroneous. To hold he was not bound to look, and was not liable, unless he knew the bits were out, was to relieve the party from all liability for his negligence, and to relieve him from all care. Any owner, of ordinary care, knowing the horse was hitched up by a person not the regular hostler, would have felt called on to examine for himself. The question whether it was negligence, under the circumstances, not to look, was one of fact for the jury, and not of law for the court. 3. The instruction that it was not negligence in the defendant to assume the hostler had done his duty *prop-*

*erly,* in connection with the ruling that he was not bound to examine to see how the fact was, relieved the defendant from the responsibility for want of care. If the bits were out, the defendant was not bound to look, and of course, would not have seen it. The judgment should be reversed and a new trial ordered.

*Wm. F. Cogswell,* for the respondent.

I. The court did not err in charging that the defendant was not liable for the negligence of the person who harnessed the horse at Macedon, whether he was the regular hostler or not. The person who harnessed the horse was not the defendant's servant. Whether he was the regular hostler, or a person employed by him, he was the servant of the innkeeper at Macedon. Had the accident been caused by the gross negligence of the hostler at Macedon, and defendant had been injured, the Macedon innkeeper would have been liable to the defendant in damages. That the hostler employed another man to harness the horse, would not have affected his liability. If this be so, then certainly the defendant would not be liable to the plaintiff for the negligence of this same servant. There can be but one responsible superior for the same subordinate at the same time, and in respect to the same transaction. (*Blake* v. *Ferris,* 5 *N. Y.* 56.) Merely having a man harness your horse, in no respect makes him your servant, so as to render you liable for his negligence, any more than having a man black your boots. If a man gives his horse to the hostler of the inn where he stops, to be harnessed, and through the hostler's carelessness the horse runs away and injures the innkeeper, would the guest be liable to him ? This is the precise principle of this case, and the hostler or person acting for him could be acting as the servant of the innkeeper alone, or of the guest alone, not of both, while harnessing this horse, under the decision in *Blake* v. *Ferris.*

Hall *v.* Warner.

The courts have held that where a servant of a livery stable keeper is hired to drive by another man, he still is the servant of the livery stable keeper, not of the temporary hirer. See *Laugher* v. *Pointer*, (5 *Barn. & Cress.* 547,) where the ·question is extensively discussed. So also when a man hires a hackney coach. (*Id.*) And even when he furnishes the coach and hires the driver of the livery stable keeper. (*Quarman* v. *Burnett*, 6 *Mees. & Wels.* 499. *Story on Agency*, § 453, a. b.) That a person is liable for any injury which arises by the act of another person, in carrying into execution that which that other person has contracted to do for his benefit, is too large a position. It would produce consequences which would shock the common sense of all men. (*Opinion of Baron Parke in the case last cited.*) See these cases cited, and the principles approved in *Blake* v. *Ferris*, (5 *N. Y.* 48.) If the defendant was not responsible for the hostler's carelessness, then he was not personally negligent unless he knew the bits were out of the horse's mouth when he started. And to assume the hostler did his duty properly, without himself examining the harness, was certainly no violation of that ordinary care to which a bailee for hire is held. For a man who might know very little about harnessing horses to examine the work of one who made that his business, every time he wanted to drive, would be more like an absurdity than ordinary care.

II. The judge's charge was quite favorable to the plaintiff. The weight of evidence was clearly against him, and the exceptions are not well taken. A new trial should be denied.

*By the Court*, TALCOTT, J. The facts in this case to be assumed on this appeal are, that the defendant hired a horse, buggy and harness of the plaintiff, a livery stable keeper at Palmyra, to go to Macedon. The defendant

stopped at an inn in Macedon. There the defendant ordered that the horse be put into the barn and fed. This was done, and for that purpose the headstall was taken off. When he ordered the horse for the purpose of returning, the person temporarily acting as the hostler at the inn, put the horse into the buggy, but omitted to put the bits in the horse's mouth. The defendant started to drive off without discovering that the bits were not in the horse's mouth, by reason of which, the horse was unmanageable and ran away, damaging himself, the buggy and harness, to recover which damage to the horse and buggy, this action is brought.

The court charged the jury, that unless the defendant knew, when he got into the buggy and took the horse in his charge, that the bits were not in the mouth, there was no negligence made out; and that the defendant was not liable for the negligence on the part of the person who harnessed the horse. To these instructions, exceptions were taken.

Some other questions were litigated on the trial, but under the charge the verdict might have been based upon the ground that the defendant was not liable for any negligence on the part of the hostler, unless he knew the bits were out of the mouth. We think this charge was erroneous.

The hirer of a thing is responsible for that degree of diligence which all prudent men use in keeping their own goods of the same kind. (*Story on Bailm.* § 399.) The hirer is not only liable for his own personal default, but also for that of his servants and persons employed by him. (*Id.* § 400.)

The hostler, or person who acted as such, at the inn, was not the servant of the livery stable keeper at Palmyra, but was the servant of the innkeeper, and as between the plaintiff and the defendant, was the servant of the defend-

ant.   The cases referred to upon the liability of the hirers of carriages, or horses, for injuries to third persons, where the driver is furnished by the stable keeper, have no application to this case.   Here, the defendant had the sole charge and control of the equipage, for the time being, and is responsible for the acts of those whom he chooses to employ to take care of it, whether they be innkeepers or not.   It is the duty of the hirer of a horse to supply him with suitable food during the time of the hiring, and any neglect on his part will make him responsible to the owner for the damage sustained thereby.   (*Id.* § 405.)

Could the hirer excuse himself by showing that he had employed some proper person to feed the horse, but that person had neglected his duty?   This would hardly be claimed.   Would it make any difference if the person so employed were an innkeeper?   There is no principle upon which such a distinction can be made.

The case of a hirer of a horse which falls sick during a journey, without the fault of the hirer, who employs the services of a professed farrier, who makes a mistake in the treatment, is not analogous.   There, the hirer is under no obligation to cure the horse, but only to do all that a prudent man can be required to do, that is, to employ a farrier presumed to have the requisite knowledge and skill, which the hirer himself is not supposed to possess.   And in this he acts as the agent of the owner, his own fault or neglect or act not having occasioned the necessity for employing anybody.

But an innkeeper, or the servant of an innkeeper, is not presumed to possess any peculiar learning or skill not accessible to other persons, which authorizes the hirer of a horse to commit the proper feeding, or harnessing, of the horse to him, without responsibility for his acts or neglects.

We think the instruction that the defendant was not

responsible for the neglect of the servant of the inn was erroneous, and that the judgment must be reversed and a new trial granted; costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, February 6, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]