DILLON (FOWLER v.). See Case No. 5,000.

## Case No. 3,916.
### DILLON v. UNION PAC. R. CO.
### [3 Dill. 319.] [1]
### Circuit Court, D. Nebraska. 1874.

MASTER AND SERVANT — "FELLOW-SERVANTS" — DUTY OF MASTER AS REGARDS COMPETENT SERVANTS AND SAFE MACHINERY — EFFECT OF SERVANT'S KNOWLEDGE OF MASTER'S FAILURE IN THIS RESPECT.

1. The courts of Great Britain and America have established the general doctrine of the non-liability of the employer for an injury of one servant caused by the negligence of another servant in the same common employment; and this doctrine of general jurisprudence, as it involves no federal question, is no more open to judicial denial in the federal courts than in the state courts, or the ordinary common law tribunals.

2. But the employer, though he may act through others, is bound to use ordinary care in providing competent servants and safe materials and structures, and is responsible to any servant who is injured by negligence in this respect: the rule as to "fellow-servants" does not extend to such a case.

[Cited in King v. Ohio, etc., R. Co., 14 Fed. 280; Thompson v. Chicago, M. & St. P. Ry. Co., Id. 567.]

3. A servant by voluntarily continuing in the employ of the master with knowledge of the incompetency of the fellow-servant, or of defective machinery and the danger to which this may expose him, waives (unless upon some special ground) the right to recover for injuries thereby caused.

4. These principles applied to the case in judgment—(an action by a locomotive engineer, who sued for an injury which happened in consequence of the want of a signal bell in the cab of his engine which was known to him from the time he entered the defendant's employ)—and it was *held* on demurrer that the petition did not set forth a case showing that the defendant was liable.

This case came before the court on demurrer to the petition. The action is brought [by John Dillon against the Union Pacific Railroad Company] to recover for personal injuries to the plaintiff while serving the defendant. It appears from the allegations of the petition, that in August, 1869, the plaintiff was employed by the defendant as a locomotive engineer, to run between Wasatch, Utah, and Bryan, Wyoming, a distance of about 115 miles, and was put in charge of engine No. 63, which was without a signal bell in the cab; that plaintiff continued to use the engine in this condition in hauling freight trains until about November 25th, 1869, when by order of his superior officer at Wasatch the plaintiff was directed to haul with said engine a train of passenger cars from Wasatch to Bryan. The engine was still without a signal bell in the cab, but had a bell over the boiler with a rope handle hanging down in front of the window in the cab. By order of the conductor, the rope designed to be attached to the signal bell was connected with the bell over the boiler by tying the two ropes together in the cab,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the knot thereby made being immediately in front of one of the panes of glass in the window of the cab. This was done before the train started. When the train had proceeded about twenty-five miles, the bell rope was pulled violently by the conductor whereby the knot uniting the ropes came in contact with a pane of glass in front of where the engineer had to stand, shattering the same. The weather was intensely cold. The plaintiff was thus exposed to the severe weather for about four hours, whereby he was very severely frozen in the lower part of the body. No allegation is made in the petition that the plaintiff complained of the want of a signal bell, or requested to have one put into the cab, or that he for this reason objected or refused to serve the defendant. Nor does the plaintiff allege that he notified the conductor of the accident to the pane of glass or made any request for time or materials with which to repair it; but he does allege that he could get nothing with which to close the opening. Nor does he allege that he notified the conductor that he was freezing, but on the other hand, avers, that he "did not know that he was freezing in any part of his body while said trip lasted, and that the first he learned of it was after he had arrived at Bryan." The injuries are minutely described and the damages placed at $25,000.

John D. Howe, for plaintiff. A. J. Poppleton and E. Wakely, for defendant.

Before DILLON, Circuit Judge, and DUNDY, District Judge.

DILLON, Circuit Judge. In determining this demurrer, it will be assumed without extended discussion that the established doctrine of the law, in the absence of statute regulation, is, that the servant assumes all the ordinary risks of the service upon which he enters, including those risks which arise from the negligence of other servants of the same master in the same employment. The extent of this rule and the scope of its operation we shall notice presently, so far as the allegations of the petition and the argument in support of its sufficiency make it necessary. But the general rule that ordinarily the common master is not liable to one servant for the consequences of the negligence of another servant in the same service, is so thoroughly settled by adjudication, as in our opinion to be no longer open to judicial question. Every court in Great Britain has concurred in the doctrine, including the courts of error; and finally, it was declared sound by the house of lords, upon full debate by eminent counsel, and upon the most deliberate consideration. Bartonshill Coal Co. v. Reid, 3 Macq. H. L. Cas. 266.

The current reports show that the rule is unquestioned in that country, and constantly applied without the numerous exceptions which some of the American courts are inclined to engraft upon it. And in this country the general rule itself is everywhere recognized, the only dispute being as to cases to which it properly applies. The cases will be found cited in Shearman & Redfield's work on Negligence, and in Dr. Wharton's treatise on the same subject. The doctrine is one pertaining to general jurisprudence; it involves no question of federal law, and therefore this court is not at liberty, any more than a state court, to disregard the uniform and settled course of judicial decision. The evils which would certainly arise from a holding by the federal courts of a doctrine in conflict with that held by the courts elsewhere upon a question which so frequently arises and of so much practical importance may easily be anticipated.

After a careful consideration of the allegations of the petition as to the negligence of the conductor in violently pulling the rope, etc., etc., we are of opinion that the case made therein falls within the general rule which exempts the master from liability, except it may be in respect to the defect in the engine in not being provided with a signal bell in the cab. In discussing the questions which arise in this view, we admit that the rule is settled both in Great Britain and America, that the master is bound to use ordinary care to employ and retain competent servants, and to furnish and maintain suitable and safe machinery and structures. We consider that view to be correct, also, which holds that this duty of the master is so far personal and inalienable that responsibility for damages caused by the negligent discharge of it exists, although the master in discharging it may, for his own convenience, act through other servants. Tarrant v. Webb, 18 C. B. 797; Gilman v. Eastern R. Co., 13 Allen, 433; Id., 10 Allen, 233, and cases cited by Mr. Justice Gray, page 238.

And just here it is that the plaintiff maintains that this rule gives him a cause of action, since his employer failed to use care in providing him with a suitable and safe engine in this, that the engine furnished him was without a usual and proper appliance, namely, a signal bell in the cab, and that it was this omission that caused the injury for which a recovery is sought. Upon the allegations of the petition it must be taken as true that the engine was defective in this respect, and it may be conceded that it is sufficiently averred that this was the proximate cause of the injury to the plaintiff. We say this may be conceded in disposing of the demurrer, though there is ground to contend that the proximate cause of the injury was not the want of a signal bell or the breaking of the pane of glass, but the plaintiff's failure to notify the conductor thereof, so that it might be closed, or to discover and report his danger. But if it be conceded that the want of the signal bell was the direct cause of the injury, the immediate question is, does the petition, notwithstanding, set out a cause of action, or rather does it contain other aver-

ments which, if true, defeat a right of recovery?

It will be observed that in the view we are now considering the case the complaint is that there was no signal bell in the cab. The plaintiff was an engineer and the defect of the engine in this respect was known to him, and it appears from the petition that it had been known to him ever since he commenced to use it, the preceding August. He knew, of course, the condition of the engine in this respect before starting out with it on the trip in question. It is not necessary to lay down a rule concerning the effect of knowledge on the part of the servant of the incompetency of a fellow-servant, or of the defective character of the machinery or structures furnished by the employer, broader than the facts of the case require.

The defect in engine was one of the existence and nature of which the engineer had full knowledge; it was peculiarly within his department, and if he voluntarily continued the use of the engine, presumptively he assumed the risk of so doing, and cannot visit it upon the employer. There may be exceptions to this rule as in the case of Clarke v. Holmes, 7 Hurl. & N. 937, in which the exchequer chamber affirmed the judgment below (6 Hurl. & N. 349), where the servant injured had complained of the dangerous state of the machinery and the master had promised to remedy the defect; or in cases, perhaps, where the servant injured did not know or have reason to apprehend the danger to which the defect of the machinery or structure exposed him. Huddleston v. Lowell Mach. Shop (1871) 106 Mass. 282; Jones v. Yeager [Case No. 7,510]; Union Pac. R. Co. v. Fort, 17 Wall. [84 U. S.] 553.

The allegations of the petition do not bring the case within the principle of the exceptions, and it falls within the general doctrine expressed by Pollock, C. B., "that a servant cannot continue to use a machine he knows to be dangerous at the risk of his employer." Dynen v. Leach, 26 Law J. Exch. 221; Id., 40 Eng. Law & Eq. 491. Strong instances of the application of the same general principle may be found in Senior v. Ward, 102 E. C. L. (1 El. & El.) 385; Griffiths v. Gidlow, 3 Hurl. & N. 648; Assop v. Yates, 2 Hurl. & N. 768; Watling v. Oastler, L. R. 6 Exch. 73; Clarke v. Holmes, supra; Paterson v. Wallace, 28 Eng. Law & Eq. 48; Buzzell v. Laconia Manuf'g Co., 48 Me. 113; Frazier v. Pennsylvania R. Co., 38 Pa. St. 104, 111; Davis v. Detroit & M. R. Co. (1870) 20 Mich. 105, 127, approving Mad River & L. E. R. R. Co. v. Barber, 5 Ohio St. 564; Hayden v. Smithville Manuf'g Co., 29 Conn. 548; Laning v. New York Cent. R. Co. (1872) 49 N. Y. 521.

Assuming it to be true as some of these cases hold (see Laning v. New York Cent. R. Co., Watling v. Oastler, Senior v. Ward, Clarke v. Holmes, above cited), that the servant's knowledge of defective materials and structures or of incompetent fellow servants defeats a recovery by him on the ground of "contributory negligence," and that it is not needful for the pleader to negative contributory negligence in the declaration (Railroad Co. v. Gladman, 16 Wall. [83 U. S.] 402), still if the facts are, as in this case, set forth, fully detailing the manner in which the injury happened, and if they show a state of case which defeats a right of recovery, a demurrer to the petition will lie. Upon the whole our judgment is that the petition does not set forth such a case as shows the defendant to be liable for the injury to the plaintiff. Accordingly judgment will be entered for the defendant on the demurrer. Judgment accordingly.

NOTE. Concerning the the liability of masters to servants, see Union Pacific Railroad v. Fort, 17 Wall. [84 U. S.] 553, affirming Fort v. Union Pac. R. Co. [Case No. 4,952], and Northwestern Union Packet Co. v. McCue, 17 Wall. [84 U. S.] 508. The courts of Great Britain and America have concurred in the general doctrine of the non-liability of the employer for an injury to one servant caused by the negligence of another servant in the same common employment. In England this doctrine has been affirmed time and time again by every court in Westminster Hall, and finally by the house of lords. Bartonshill Coal Co. v. Reid, 3 Macq. H. L. Cas. 266. The first case was Priestley v. Fowler, 3 Mees. & W. 1. In Clarke v. Holmes (1862) 7 Hurl. & N. 937, 947, itself an important case on this subject, Mr. Justice Byles, remarks: "The case of Priestley v. Fowler introduced a new chapter into the law, but that case has since been recognized by all the courts, including the court of error and the house of lords. So that the doctrine there laid down, with all the consequences fairly deducible from it, are part of the law of the land." In a very recent case this rule is said to be "conclusively settled." Feltham v. England, L. R. (1866) 2 Q. B. 33. In this case Mellor, J., says that "this rule is not altered by the fact that the servant to whom the negligence is imputed was a servant of superior authority, whose lawful directions the plaintiff was bound to obey." In another case it is said: "A foreman is a servant as much as the other servants whose work he superintends." Per Willes. J., in Gallagher v. Piper (1864) 111 E. C. L. 669. Further, as to who are "fellow-servants" within the rule, see Whart. Neg. § 229; Wigmore v. Jay (1850) 5 Welsby, H. & G. [Exch.] 354; Skipp v. Eastern Counties Ry. Co., 9 Welsby, H. & G. [Exch.] 221; Wiggett v. Fox, 11 Welsby H. & G. [Exch.] 832; Bartonshill Coal Co. v. Reid, 3 Macq. H. L. Cas. 266; Waller v. Southeastern Ry. Co., 2 Hurl. & C. 102; Gallagher v. Piper, 111 E. C. L. 669; Morgan v. Vale of Neath Ry. Co., 5 Best & S. 570, 736; Tunney v. Midland Ry. Co., L. R. 1 C. P. 291; Lovegrove v. London, B. & S. C. Ry. Co., 16 C. B. (N. S.) 669. See Murphy v. Smith, 19 C. B. (N. S.) 361, as to servant being considered as the master's representative in the establishment. On this last point see, also, remarks of Mr. Justice Davis in Fort's Case, supra, to the effect that Collett, who had been entrusted by the railroad company with the care and management of dangerous machinery was the representative of the company, which was liable "either upon the maxim of respondeat superior or upon the obligations arising out of the contract of service" for Collett's wrongful order to the plaintiff—that order relating to a duty within the scope of Collett's employment and outside the scope of the plaintiff's engagement, and wholly disconnected with it.

In this country the general rule is recognized

as the law by the courts of, perhaps, every state which has passed on the question, except where it is changed by statute. The only dispute is as to the extent of the rule, or rather as to the cases to which it is justly applicable. We do not recollect any case in the supreme court of the United States either directly sustaining or rejecting the general doctrine. It is noticeable, however, that in the case of the Northwestern Packet Co. v. McCue [supra]. Mr. Justice Davis, delivering the opinion of the court, remarks: "It is insisted on the part of the plaintiff in error, that a master is not responsible to a servant for injuries caused by the negligence or misconduct of fellow-servant in the same general business;" but "whether this general proposition be true or not, it is not necessary to determine in the state of record." And in Fort's Case the same learned justice observes: "It was assumed on behalf of the plaintiff in error, on the argument of this cause, that the master is not liable to one of his servants for injuries resulting from the carelessness of another, when both are engaged in a common service, although the injured person was under the control and direction of the servant who caused the injury. Whether this proposition as stated, be true or not, we do not propose to consider, because, if true, it has no application to this case." This language would lead to the inference that the supreme court may entertain doubts as to the soundness of the rule under discussion. But as the general doctrine is so firmly rooted by judicial decision in Great Britain and in the different state courts of this country, as it is one which pertains to general jurisprudence, and involves no question of federal law, it would seem that it is no more open to re-agitation in a federal court than in any other court of common law powers.

We may mention some exceptions to the rule, or cases which are not considered as falling within its reasons, and to which, therefore, it does not apply. It is settled, both in England and America, that the master is bound to use ordinary care to employ, or to retain in his employment, none but competent servants, and to use like care to furnish and maintain suitable and safe machinery and structures. Bartonshill Coal Co. v. Reid, supra; Tarrant v. Webb, 18 C. B. 797; Weems v. Mathieson, 4 Macq. H. L. Cas. 215; Clarke v. Holmes, supra; and see cases next cited. It is also settled by the courts, that this duty of the master is so far personal that responsibility for injuries directly caused by the negligent discharge of it exists, although the master may for his own convenience act through other servants. On this subject see the following very recent cases in addition to those last cited: Brothers v. Cartter (1873) 52 Mo. 372, and cases cited by Wagner, J.; Gilman v. Eastern R. Corp., 10 Allen, 233, 13 Allen, 433, and cases cited by Gray, J.; Laning v. New York Cent. R. Co. (1872) 49 N. Y. 521. And the reason is that this duty of the master is direct and personal, and must be discharged in person or by others for him, for whose negligent acts and omissions he is responsible where these are the immediate cause of injury to his servants.

On this point we call attention to the following observations of Mr. Justice Davis in Fort's Case: "It is apparent, from these findings, that the rule of the master's exemption from liability for the negligent conduct of a co-employe in the same service be as broad as is contended for by the plaintiff in error, that it does not apply to such a case as this. This rule proceeds on the theory that the employe, in entering the service of the principal, is presumed to take upon himself the risks incident to the undertaking, among which are to be counted the negligence of fellow-servants in the same employment, and that considerations of public policy require the enforcement of the rule. But this presumption cannot arise where the risk is not

within the contract of service, and the servant had no reason to believe he would have to encounter it. If it were otherwise, principals would be released from all obligations to make reparation to an employe in a subordinate position for any injury caused by the wrongful conduct of the person placed over him, whether they were fellow-servants in the same service or not. Such a doctrine would be subversive of all just ideas of the obligations arising out of the contract of service, and withdraw all protection from the subordinate employes of railroad corporations. These corporations, instead of being required to conduct their business so as not to endanger life, would, so far as this class of persons were concerned, be relieved of all pecuniary responsibility in case they failed to do it. A doctrine that leads to such results is unsupported by reason and cannot receive our sanction."

In this connection an important practical question may be adverted to, and that is, as to the effect of knowledge on the part of the servant injured that the master had not discharged his duty in providing competent fellow servants or fit and safe materials or machinery. The following are the more important cases on this point: Watling v. Oastler (1871) L. R. 6 Exch. 73; Senior v. Ward, 1 El. & El. (102 E. C. L.) 385; Dynen v. Leach. 26 Law J. Exch. 221; Id., 40 Eng. Law & Eq. 491; Assop v. Yates, 2 Hurl. & N. 768; Griffiths v. Gidlow, 3 Hurl. & N. 648; Smith v. Dowell, 3 Fost. & F. 238; Laning v. New York Cent. R. Co. (1872) 49 N. Y. 521 (full discussion); Frazier v. Pennsylvania R. Co.. 38 Pa. St. 104; Davis v. Detroit & M. R. Co. (1870) 20 Mich. 105. 127, where the cases are referred to and the subject fully examined by Cooley, J.; Hayden v. Smithville Manuf'g Co. (1861) 29 Conn. 548; Buzzell v. Laconia Manuf'g Co., 48 Me. 113; Jones v. Yeager [Case No. 7.510.] They authorize the deduction of the general rule that if the plaintiff voluntarily continue in the master's service with full knowledge of the incompetency of the co-servant, or of the unfit and defective machinery, and of the danger thereby occasioned, this will be considered such "contributory negligence" on his part as to defeat his right to recover unless upon some special ground, as in Clarke v. Holmes, 6 Hurl. & N. 349, affirmed 7 Hurl. & N. 937, where the servant made complaint, and the master thereupon promised that the grounds of it should be removed. This rule, that knowledge by the servant injured of the danger will disentitle him to recover if he voluntarily remains in the service without complaint, clearly applies to a case where it is the duty of the servant himself to inform the master or superior of the co-servant's unfitness, or the unfitness of the materials or structures. See particularly on this point, Patterson v. Pittsburg & C. R. Co.. Sup. Ct. Pa. 1874 [76 Pa. St. 389]; Snow v. Housatonic R. Co., 8 Allen, 441. The reason for this exemption of the master from responsibi.ity, would not seem to apply where the servant injured could not reasonably be held to know the danger to which the master's neglect of duty exposed him. It seems to us that some of the cases have asserted rather too rigid a rule against the servant arising out of his knowledge of the neglect of personal duty of the master as respects co-servants and materials, and his supposed acquiescence in it; and there are aspects of this subject that need to be further discussed and decided before the law can be regarded as settled. See Whart. Neg. § 214, and cases cited.

What is necessary to constitute relation of master and servant. see Mr. Hilliard's article, 1 Cent. Law J. 396. citing Brady v. Giles, 1 Moody & R. 494; Lackawanna & B. R. Co. v. Chenewith. 52 Pa. St. 382; Flinn v. Philadelphia. U. & B. R. Co.. 1 Houst. 469; Williamson v. Wadsworth, 49 Barb. 294; Wood v. Cobb. 13 Allen, 58; Fay v. Davidson, 13 Minn. 523

[Gil. 491]; Stone v. Western Transp. Co., 38 N. Y. 240; Hall v. Warner, 60 Barb. 198; Sykes v. Bates, 26 Iowa, 521; Chicago Ry. Co. v. Volk, 45 Ill. 175; Whart. Neg. c. 5, § 202 et seq.; Shear. & R. Neg. §§ 60, 73.

Wilful Tort of Servant. While the liability of the master, says Mr. Hilliard (1 Cent. Law J. 398), "for the mere negligence of his servant seems perfectly well settled,·the cases are not entirely reconcilable with reference to his liability for wilful wrongs of the servant, though done in connection with the master's business. The strong tendency, however, of the more recent decisions is, to hold the master equally responsible for both classes of injury. The question has of late been most frequently raised in actions against railroad companies for acts of force, unjustifiable in kind or excessive in degree, committed by their conductors or other officers from violation of the rules of the company. In Seymour v. Greenwood, 30 Law J. Exch. 189, 7 Hurl. & N. 358, Williams, J., well ·expresses the principle of liability upon which the most recent cases seem to proceed. 'It is argued that though it cannot be denied that the defendant authorized his guard to superintend the conduct of the omnibus, generally, and that that authority must include an authority to turn out any passenger who misconducts himself, yet that it gives no authority to turn out an unoffending passenger. But by giving the guard authority to turn out an offending passenger, the defendant necessarily gave him also authority to judge for himself who should be considered an offending passenger.' Acc. Goff v. Great Northern Ry. Co., 3 El. & El. 672, where the act complained of was the arrest of the plaintiff for the benefit of the company, there being authority to arrest a passenger for traveling .without payment of his fare, and the court held that the station master and the policeman had implied authority to arrest those whom he believed to be guilty, and if there was a mistake, it was a mistake made within the scope of their authority. But in the late case of Poulton v. London & S. W. Ry. Co., L. R. 2 Q. B. 534, the important distinction was made that when a railroad company would itself have no right to arrest, a wrongful arrest by one of its employes would not render the company liable, as where the plaintiff was detained in custody by two policemen, under the orders of the station master, for non-payment of the freight of a horse, the company would have a right to detain the horse, but not to arrest the owner, and therefore the action for false imprisonment did not lie." Mr. Hilliard refers to the following cases as showing the course of authority on this subject: Gilmartin v. New York, 55 Barb. 239; Luttrell v. Hazen, 3 Sneed. 20; Althof v. Wolf, 2 Hilt. 344; Seymour v. Greenwood, 7 Hurl. & N. 356. See Shear. & R. Neg. §§ 65, 67.

"And the general rule," says Mr. Hilliard (1 Cent. Law J. 398), "has been laid down that a master is not responsible for the wilful or criminal wrong or trespass of his servant. Jones v. Hart, 2 Salk. 441; Coleman v. Riches, 16 C. B. 104; Hubbersty v. Ward, 8 Exch. 330. Or that the injury must arise in the execution of some service, lawful in itself, but negligently or unskilfully performed, and not be a wanton violation of law by the servant, though occupied about the master's business. Moore v. Sanborne, 2 Mich. 519. This was the point decided in the leading case of McManus v. Crickett, 1 East, 109, where the court of king's bench went into an examination of all the authorities, and after much discussion and great consideration, held that, by committing a wilful wrong, the servant virtually abandoned his master's business, who, therefore, was not liable to the party injured. And text books of authority have favored this view. See 2 Greenl. Ev. §§ 52. 168; 2 Kent. Comm. (5th Ed.) 258; 1 Shars. Bl. Comm. 431." See Coleman v. Riches, 16 C. B.

104 (leading case), as to liability of master for fraud of his servant. Grant v. Norway, 10 C. B. 665; Hubbersty v. Ward, 8 Exch. 330.