ALEXANDER *v.* TENNESSEE & LOS CERRILLOS GOLD & SILVER MINING CO.

Filed May 3, 1884.

1. NEGLIGENCE OF MASTER—DEFECTIVE APPLIANCES—CONTRIBUTORY NEGLIGENCE.
   In an action for personal injuries, where it appeared that plaintiff, the foreman of a mine, before he entered the service of the defendant mining company, was cognizant of a defect in the hoisting machinery, by means of which he was subsequently injured, and brought it to the attention of the superintendent, but undertook the employment notwithstanding, without any promise that it should be remedied, the court properly held him guilty of contributory negligence, and directed a verdict for defendant.[1]

2. FEDERAL PRACTICE—DIRECTING A VERDICT.
   Although a court of the United States has no authority to enter a peremptory nonsuit, it has authority to direct a jury to find a verdict for a defendant, and it should always do so when it will not permit a verdict for the plaintiff to stand.

This case was tried at the February, 1883, term of the First judicial district court within and for the county of Santa Fe, before the Hon. S. B. AXTELL, chief justice.

*Fiske & Warren,* for appellant.

*H. L. Waldo* and *Wm. Breeden,* for appellee.

BELL, J.   The appellant was the plaintiff in the court below.   The action was brought to recover damages for injuries received by the plaintiff while in the employment of the defendant, in consequence of the failure on the part of the defendant to provide and maintain safe, proper, and sufficient brakes, apparatus, and appliances in connection with a certain whim used for hoisting ore out of the mine of the defendant company.   Upon the trial evidence was introduced by the plaintiff to the following effect: That he, the plaintiff, was a miner by profession, having had an experience of 15 years in that employment, and that he regarded himself as an expert in that business;

[1] As to servants' continuing in employment after notice of danger, see Railroad Co. v. Mares, 8 Sup. Ct. Rep. 321; Snowberg v. Paper Co., (Minn.) 45 N. W. Rep. 1131; Rogers v. Railroad Co., (Tex.) 13 S. W. Rep. 540; Railway Co. v. Hines, (Ill.) 23 N. E. Rep. 1021.

that on some day subsequent to the twenty-fifth day of April, 1881, the plaintiff was employed by the defendant company, through the agency of its superintendent, W. E. Parish, as foreman of the company, and placed in charge of the work at the mine. According to his own testimony the work was substantially all done under his supervision and direction. He employed and discharged the laborers in and about the mine, assigned them to such work as he deemed proper, and directed the general course of the work. This he did under the general supervision of Mr. Parish, but it would appear from all the testimony that as to the conduct of the actual work at the mine the plaintiff was in substantially supreme control.

Before entering into the employment of the defendant company as its foreman, as aforesaid, and on or about the twentieth of April, 1881, there had been in use at the mouth of the mine a certain whim, for the purpose of hauling up ore from the bottom of the shaft. At about the last-mentioned day, the whim thus in use was broken or destroyed, or its usefulness in some manner so much impaired that it was cast aside, and, under the superintendence of Mr. Parish, a new whim was erected. This took place on or about the twenty-third of April. At that time, and when the whim was being put up, the plaintiff was present at the mine, though not in the employment of the company. While the whim was being erected, the plaintiff testifies that he heard a certain man, whose name he gives, speak to Mr. Parish in reference to it, and tell him, in substance, that there should be an iron band placed around the whim at or near its top, in order to strengthen it there, and keep together more firmly and securely the staves out of which the whim was constructed. After this occurrence, and on or about the twenty-fifth of April, the plaintiff himself testifies that he spoke to Mr. Parish in reference to the whim, and said that he should put a band around the top of the drum, being substantially the same advice that had already been given to Parish by another person in the plaintiff's presence; and that Parish represented it to the plaintiff to be a good whim, and all right in every respect; that subsequent to this time, but how long exactly does not appear from the record, the plaintiff, with knowledge of what he deemed the faulty construction of the whim in question, and though nothing had been done to strengthen it in any way, so far as the record shows, entered into the employment of the defendant, as its foreman, and continued in such employment until the sixteenth day of September, 1881, upon which day the accident took place which resulted in the injuries to the plaintiff for which this action is brought.

It does not appear that when the plaintiff thus entered into the employment of the company there was any promise or assurance on the part of the defendant that the alleged defect in the construction of the whim would thereafter be remedied. It appears that upon the sixteenth day of September, 1881, in the morning thereof, the plaintiff, having on the day prior thereto employed a new hand to work in

the mine, went down into the shaft in order to assign him to the work which he wished him to do in the mine; that, having done so, and while on his way up the shaft, the ore bucket, which had been drawn to the top of the shaft, filled with material from the mine, fell violently down the shaft and struck the plaintiff with such force as to cause the injuries for which seeks to make the defendant liable.     It appears that the bucket, laden with material, had been drawn up to the mouth of the shaft, and that when it had arrived there, and was some distance above the trap-doors, which were so arranged as to shut the mouth of the shaft, in accordance with the instructions theretofore given by the plaintiff himself to the man in charge of the whim, the brake was applied to the whim, and the sweep which fastened into the ratchet-wheel at the top of the whim was thrown out of gear; that the brake failed to act properly; that the whim slipped and the bucket began violently to descend, the trap-doors not being closed, and that then the man at the whim, in his effort to stop the descent of the ore bucket, applied his lever to the sweep and threw it into gear upon the ratchet-wheel, but that, owing to the momentum acquired by the bucket, or the alleged insufficiency in strength of the whim, the staves of the whim were torn out, the bucket continued to descend, and struck and injured the plaintiff.     It appears that had the trap-doors at the top of the shaft been closed before the sweep was thrown out of gear, and then the brake had failed to perform its office, no damage could have been done, as the bucket would have been arrested by the trap-doors.

The plaintiff testified that according to his instructions the trap-doors were not to be closed until after the brake was applied, and the sweep thrown out of gear.     This is also the evidence of Beckwith, the man in charge of the whim, and who was called as a witness for the plaintiff.     He also testified that in his judgment the trap-doors should have been closed before the sweep was thrown out of gear, and that that course was not taken because of the order which he had received upon that subject from the plaintiff.     It appears that the ordinary legitimate purpose for which this sweep was placed in gear upon the ratchet-wheel was to enable the horse fastened to the sweep to wind up the rope upon the drum, which was attached to the ore bucket, and thereby draw it up from the bottom of the mine.     Whether or not it was any part of the legitimate function of the sweep to be thrown in gear and to act as a brake does not appear.     The plaintiff, though a man of great experience as a miner, testifies that he did not know that it was to be applied for any such purpose.     The evidence shows that from the date of its erection, in April, 1881, until the day of the accident, September 16, 1881, the whim had satisfactorily performed its legitimate office of drawing up ore and other material from the bottom of the mine.

Evidence was also introduced showing that the plaintiff was seriously injured by reason of the descending bucket colliding against

his person. This was in substance the evidence for the plaintiff, and after its introduction counsel for the defendant moved the court to instruct the jury to find for the defendant. The court thereupon directed the jury to find a verdict for the defendant, which was done. To this ruling and action of the court the plaintiff then and there excepted. The only question presented by this record is, was the plaintiff entitled to recover upon the evidence introduced in his behalf? If upon that evidence the plaintiff was entitled to recover, the court necessarily erred in directing a verdict for the defendant.

Two questions were presented: *First*, was there negligence on the part of the defendant for which it should be held liable? *Second,* was there such contributory negligence on the part of the plaintiff as to relieve the defendant from any liability?

We think it is only necessary, in this case, to consider the latter of these two propositions. It is not entirely clear, from the evidence introduced, that the plaintiff himself was not the vice-principal of the defendant. He was there in practical charge of the operations of the mine of the defendant company, according to his own evidence and the evidence of the superintendent of the company. He discharged and employed such persons connected with the conduct of the work as he deemed best for the interests of the defendant. It does not appear that he was limited as to the number of persons whom he might employ, or the work to which he might assign any person so employed. We refer to this latter fact because it would appear, from the facts in evidence, that the trap-door at the mouth of the mine, if shut before the sweep was thrown out of gear, would have prevented the accident which resulted in the plaintiff's injury. The witness Beckwith, who had charge of the whim and work at the mouth of the mine, testified that in his judgment that course should have been taken, and that in such case the accident could not have taken place. It does not appear from Beckwith's evidence but that he might have closed these trap-doors without difficulty before throwing the sweep out of gear and applying the brake; but the plaintiff testified that it would not have been possible for Beckwith to have closed the trap-doors, and at the same time have properly operated the two levers connected respectively with the brake and sweep. If this be true, it does not appear but that the plaintiff, empowered as he was to employ such persons as he deemed proper or necessary for the conduct of the work, and assign them to such duty as he might choose in connection therewith, might as well have supplied an additional hand, if that were necessary, to close these trap-doors, which would have made such an accident as did occur impossible, according to the evidence of all the witnesses. We think that it was negligence upon the part of the plaintiff not to have provided this safeguard, not only for the protection of himself, but for the protection of the other employes as well, in and about the mine.

The plaintiff's case seems to have been wholly based upon the al-

leged defects in the construction of the whim used for hoisting. In that behalf it is said that the whim should have been encircled by a certain iron band fixed to it near the top, and that it would then have been constructed in a proper and safe manner. According to all the evidence the legitimate and ordinary office performed by this whim was to draw up the laden ore buckets from the bottom of the mine. The ratchet-wheel around the top of the drum served as a rest within which the sweep when in gear was fixed for the purpose of turning the whim. It appears that for the period of about five months the whim had been in constant use, and had performed this office in a satisfactory manner. It does not appear from the evidence that it was any part of the legitimate functions of that ratchet-wheel to serve as a brake to prevent the descent of the bucket into the mine, and at the time of the accident the throwing of the sweep into gear was but a desperate effort as a last and only resort to arrest the falling bucket. How much momentum had been acquired by this laden bucket before the sweep was thrown into gear the evidence does not disclose; but it is quite certain that when the sweep was thrown into gear a heavily laden ore bucket was descending into the mine at a high rate of speed. It is difficult to estimate what power it would have required, applied to the ratchet-wheel by throwing the sweep into gear, to have arrested its revolution.

We think it is quite clear that it was not intended that the whim itself should be constructed of sufficient strength to do this work. The real defect in the appliances in use at the time appears to us to have been in the brake, of which, however, no complaint has been made. Had the brake properly done its work no such accident could have occurred.

But the plaintiff complains of the faulty construction of the whim, and seeks to show that the accident arose solely from its faulty construction. If this were so, we think that the plaintiff, by his contributory negligence, has relieved the defendant from any liability arising from that source. The evidence shows that, before he went into the employment of the company, he was aware of the improper construction of the whim in question, not only from hearing the attention of the superintendent called to it by another person, but it also appears that he himself had spoken with the superintendent in regard to it, and had called his attention to the defects alleged to have existed in its construction. With this knowledge, and after these conversations in regard to the whim, and without any promise that any change would be made by which the alleged defects would be cured, the plaintiff took service from the defendant, without condition in this regard, and continued in that service for several months before the accident took place. This, we think, was such contributory negligence as relieved the defendant from any liability whatever to the plaintiff, under the circumstances.

The rule of law is perfectly well settled, and is as follows:

"If the servant, before he enters the service, knows, or if he afterwards discovers, or if, by the exercise of ordinary observation or reasonable skill and diligence in his department of service, he may discover, that the building, premises, machine, appliance, or fellow-servant, in connection with which or with whom he is to labor, is unsafe or unfit in any particular, and if, notwithstanding such knowledge, or means of knowledge, he voluntarily enters into or continues in the employment without objection or complaint, he is deemed to assume the risk of the danger thus known or discoverable, and to waive any claim for damages against the master in case it shall result in injury to him." 2 Thomp. Neg. p. 1008, § 15; Wood, Mast. & Serv. §§ 377, 384; *Dillon* v. *U. P. Ry. Co.* 3 Dill. 319.

The principle of law thus laid down is sustained by all the authorities, and is so well settled as to be elementary. Some exceptions and limitations there are to the rule, but the case at bar does not, in our judgment, come within any of them.

In another section of the same work the author says:

"There is no reason, however, why, in plain cases, the question of the servant's accepting the risk by continuing in the service after knowledge of the defect should not be resolved against him as a matter of law. It was done, with obvious propriety, in a case where an engineer had been in charge of a particular locomotive for about three months, which had no signal-bell, in consequence of which he was injured. He did not allege that he had complained of the want of such bell, or that he had asked to have one supplied, or that he had objected to serving for that reason. It was held that his petition was bad on demurrer." 2 Thomp. Neg. p. 1015, § 20; *Billon* v. *U. P. Ry. Co.*, *supra*.

We think that the plaintiff's case comes clearly within the doctrine enunciated by these authorities; that, upon all the evidence introduced in his behalf, he was not entitled to recover; and that the court properly directed a verdict for the defendant.

It is objected, by counsel for the appellant, that a court of the United States has no power to order a peremptory nonsuit. That, no doubt, has been the law ever since the decision of *Elmore* v. *Grymes*, 1 Pet. 469; but that course was not taken in this case,—a nonsuit was not ordered by the court, but a verdict was directed for the defendant, because the evidence failed to establish the right of the plaintiff to recover. Under such circumstances it is not only right, but it is the duty of the court to so instruct the jury, and the power to do so has been declared in numerous adjudications of the supreme court of the United States. In *Railroad Co.* v. *Jones*, 95 U. S. 439, this authority is expressly affirmed. The court says in that case:

"One who has, by his negligence, brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and of the common law. A plaintiff in such case is entitled to no relief. * * *"

That was a case where the plaintiff had recovered damages for the alleged negligence of the defendant railroad company in running into a train of cars standing in a tunnel. The plaintiff was riding upon the pilot of the locomotive. The court held that this was such contributory negligence upon his part that, as matter of law, he was not

entitled to recover, and that it would have been error upon the part of the trial court to have refused to direct a verdict for the defendant, had it been requested so to do.   The court says:

"The plaintiff was not entitled to recover.   It follows that the court erred in refusing the instruction asked upon this subject.   If the company had prayed the court to return a verdict for the defendant, it would have been the duty of the court to give such direction, and error to refuse."   Citing *Gavett* v. *M. & L. R. Co.* 16 Gray, 501; *Merchants' Bank* v. *State Bank,* 10 Wall. 604; *Pleasants* v. *Faut,* 22 Wall. 121.

It is doubtless true, as urged by counsel, that the court has the right to exercise this power only when the evidence is such as to leave no room for doubt that it is the duty of the jury to find accordingly. One of the tests, and perhaps the most satisfactory test, for the exercise of this power, is, would the court have permitted a verdict for the plaintiff to stand?   If, upon the evidence, the court would have felt compelled to set a verdict for the plaintiff aside, it would be its duty to direct the jury to find for the defendant.

It is urged for the plaintiff that the courts of the territory, not being in strict sense courts of the United States, adjudications of the supreme court of the United States do not necessarily govern their decisions; but that is not law.   In *Herrera* v. *Chaves* the rule is properly laid down to be:

"We are constrained to regard the decisions of the supreme court of the United States as conclusive, if they cover the case before us; the reason being that an appeal or writ of error lies from the final decrees or judgments of the supreme court of a territory directly to the United States supreme court." 2 N. M. 86; *Montoya* v. *Donohoe,* Id. 214.

It follows, from these views, that there was no error on the part of the court below in directing a verdict for the defendant.   The judgment should be affirmed; and it is so ordered.   BRISTOL, J. I concur.