(3 Misc. Rep. 526.)

## RECKA v. OCEAN STEAMSHIP CO. OF SAVANNAH.

(Common Pleas of New York City and County, General Term.    May 1, 1893.)

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—ASSUMPTION OF RISK.
      A longshoreman who is employed to hook cotton bales with hooks attached to the hoisting tackle, and who knows that the hooks are defective, and that the bales are liable to fall, assumes the risk of being struck by a falling bale, since no particular skill, judgment, or experience is needed to appreciate such consequences.

2. SAME—ORDER OF FOREMAN.
      An order of the foreman to go on and use the hooks after the longshoreman complained that they were "no good" does not relieve him from the risk of the defect and the resulting peril, both of which were plain at a glance.

3. SAME.
      The order of the foreman did not necessarily require the longshoreman to expose himself to danger, where it appears that the hooks, the management of which was wholly in his hands, could be adjusted to the bale so as to lift it safely, and that it was not necessary for the longshoreman to stand under the bale when it ascended.

Appeal from trial term.

Action by Henry Recka against the Ocean Steamship Company of Savannah for personal injuries alleged to have been sustained through defendant's negligence while plaintiff was engaged in his duty as defendant's servant.    From a judgment entered on a verdict of $1,193.98 in plaintiff's favor, defendant appeals.    Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Hoadly, Lauterbach & Johnson, (William N. Cohen, of counsel,) for appellant.

Herbert T. Ketcham, for respondent.

DALY, C. J.    The plaintiff was a longshoreman employed by the defendant, and at the time of the accident was engaged in the work of piling cotton bales in tiers on the dock.    The cotton was brought on hand trucks to the pile at which the plaintiff was standing, and his duty was to hook the bales with hooks attached to the hoisting tackle by which they were lifted to the position required.    He had been employed all day until 5 o'clock, and had helped to tier several hundred bales.    About that hour he hooked one of the bales, called to the men engaged in hoisting to go ahead, and then drew back and looked up.    As the bale went up it slipped out of the hooks, and, before the plaintiff could get from under, as he attempted to do, fell upon him, and caused the injuries for which he sues.    To explain why this bale which he had hooked should slip out of the hooks and fall, he testified that the hooks

were too straight in the body, and, when the rope or sling pulled on the edges to which it was fastened to close the hooks, it pressed the body of the hooks against the edge of the bale, and that threw out the points, and released the bale. The complaint alleged that the defendant negligently supplied hooks which were so straight in their length between the rope and the part thereof which was turned at an angle to said length, and which were so short between said angle and the ends thereof, that the same could not be securely fastened to the said bales. It appeared from the testimony of the plaintiff that as soon as he saw the hooks that morning he thought they were "no good," and told the foreman so, but the latter told him to go on with his work. He went on working with the hooks all day, up to the time of the accident. During that time they missed and slipped so many times when he attached them to bales of cotton that he could not count them. He lost perhaps nearly half the bales he hooked, by the hooks slipping when they were attached to the bales and the attempt was made to hoist, so that the bale was not lifted by the hooks, and he had to hook it again. When the bale was in the air he drew a little back,—a step, a bit,—and watched the bale taken in. Upon these facts the plaintiff claimed that the accident was caused by the negligence of his master in furnishing implements to work with which were not reasonably safe, and that he himself was free from any negligence contributing to the injury. The learned trial judge thought that a question of fact on both issues was presented for the jury, and denied a motion to dismiss the complaint made at the close of the plaintiff's case, and at the close of the whole evidence; and, the case being submitted to the jury, they found for the plaintiff.

It seems clear that the motion to dismiss the complaint should have been granted. If the hooks were defective in shape, and therefore insufficient and improper for the plaintiff to use, the defect was known to the plaintiff, and thoroughly understood and appreciated by him, and he therefore voluntarily took the risk resulting from their use. Where implements used in the master's business are of a certain kind or condition, and the servant knows it, he voluntarily takes the risk resulting from their use. Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. Rep. 358. The hazard or risk which attaches to the use of the implement was one of the risks which the plaintiff assumed in entering upon the service in which he was engaged; for such hazard or risk was apparent to ordinary observation, and so were the consequences which might result from the use of the defective implement, and no particular skill, judgment, or experience was needed to appreciate such consequences. It is claimed, however, that the plaintiff is relieved from responsibility by the order of the foreman to go on and use the hooks when he complained that they were "no good." The just and fair rule which protects a servant who performs, by his master's express orders, acts which are not inevitably or immediately dangerous, (Hawley v. Railway Co., 82 N. Y. 370,) or in obedience to such orders uses an implement obviously defective, but an appreciation of the consequences which might result from its use requires skill or judg-

ment not possessed by an ordinary observer, (Davidson v. Cornell, [N. Y. App.] 30 N. E. Rep. 573,) are not applicable to this case, for the danger from the use of the hooks was not only apparent, but threatening and imminent. The plaintiff saw that the hooks slipped nearly half the time he adjusted them to a bale of cotton, and ordinary intelligence could appreciate the consequences of their slipping when the bale was suspended in the air. The fact that the hooks were insufficient was obvious, and the resultant peril plain, at a glance, and, the plaintiff having voluntarily remained in a position where he must be injured if the accident which was imminent occurred, he took the risk of such defect. Shaw v. Sheldon, 103 N. Y. 667, 9 N. E. Rep. 183. But the orders of the foreman did not necessarily require the plaintiff to expose himself to danger. In the first place, the management of the hooks was wholly in the plaintiff's hands. They could be adjusted to the bale so as to lift it safely. The plaintiff had done it hundreds of times that day. Half of the times it slipped off and did not lift the bale, and he then readjusted it, and it performed the required function. I am satisfied from the facts that the hooks were efficient when properly handled, and the plaintiff was responsible for the manner of using them, and cannot recover for the consequences of his own carelessness in that respect. In the next place, the plaintiff was not required by the orders of the foreman to stand under the bale when it ascended. The excuse is made that he was crowded by the trucks bringing the cotton and returning. The truckmen placed the trucks where he required them for hooking, and the evidence does not show that he could not give directions to the truckmen which would have left him room to move out of danger. The bale was not lifted until he gave the order, and it would seem that he had the time and opportunity to place himself out of danger. No orders of the foreman coerced him in this regard, and he is not shielded from responsibility on account of being required to use the hooks. The judgment should be reversed, and a new trial granted, with costs to abide event. All concur.