VAN WYCK, J.   This is a submission under section 1279 of the Code of Civil Procedure.   The will of Philip Leutzbach gives $800 to his daughter Therese, directs the balance to be divided equally between his three minor children, Therese, William, and Frederick, and appoints the plaintiff, Strube, his executor, giving him full power to sell said estate to his best knowledge.   He left $800 in personal estate, and the balance in real estate.   Does this will give the executor good power to sell real estate? is the question we are called upon to answer.   We think it is manifest that a general power in trust is confided to the executor to sell the real estate, with a clearly-implied duty imposed upon him of dividing the proceeds therefrom equally between these three minor children.   Kinnier v. Rogers, 42 N. Y. 531.   If the defendant is correct in his contention that this power clause creates a beneficiary power in favor of plaintiff, Strube, vesting an absolute estate in him as the donee of the power, we are satisfied Strube, after conveying as executor, would be estopped from thereafter setting up any claim to the same in his own right.   Plaintiff is entitled to judgment, with costs.   All concur.

(12 Misc. Rep. 217.)

VAN SICKLE v. ATLANTIC AVE. R. CO.

(City Court of Brooklyn, General Term.   April 22, 1895.)

1. MASTER AND SERVANT—INJURIES TO SERVANT.
   In an action for injuries to an employé of defendant street-car company caused by a car unexpectedly taking the switch leading from the main track into the car house, plaintiff gave evidence that the switch was defective, and was liable to be opened by anything striking it, or by the jar of an approaching car, but there was no evidence that the switch was closed when the car approached it.   Defendant's evidence showed that it was customary to keep the switch blocked; that when a car was switched it was the duty of the conductor to take out the block and open the switch, and, after the car had passed through, to close the switch and replace the block; and that it was the duty of the injured employé to furnish the block.   *Held,* that there was no evidence to charge defendant with negligence.

2. SAME—RISK ASSUMED.
   Where a servant knows that the appliances with which he works are defective, and he does not complain of their condition, he assumes the risk thereof.

Action by Annie De G. Van Sickle, as administratrix of Joseph Q. Van Sickle, deceased, against the Atlantic Avenue Railroad Company, for injuries causing the death of plaintiff's intestate. The complaint was dismissed, and plaintiff's exceptions were ordered to be heard at general term in the first instance.   Judgment for defendant.

Argued before OSBORNE and VAN WYCK, JJ.

Horace Graves, for plaintiff.
Tracy, Boardman & Platt, for defendant.

OSBORNE, J.   Plaintiff's intestate had been in defendant's employ for some 18 or 19 years prior to his decease, and for the past

4 or 5 years had been foreman of the repair shop of the Bergen Street Line of defendant, located on Bergen street, at the termination of that line, and having "charge of the fixing and repairing of the cars and of the depot, and looking after the depot in general, as regards repairs"; and in the absence of James J. Roddy, the superintendent, deceased had general charge of the depot. At the termination of this line, on Bergen street, and on the northerly side of the street, was its car house, which connected with the tracks on the street by a tongue switch. A short distance further east was a cross-over switch, used for transferring cars from the southerly or up track to the northerly or down track. On January 10, 1891, the day that plaintiff's intestate met his death, he was engaged in repairing a car (No. 11) which was standing on the northerly or down track on Bergen street, with its rear end overlapping the switch leading into the car house. One Thomas Roddy, a young man also in defendant's employ, got on car No. 40, standing on the southerly track, and started to drive it up to the cross-over switch, with a view of transferring it to the northerly or down track. After driving about two car lengths, his car took the switch leading into the car house, ran up against the car which deceased was working upon, and the head of deceased was crushed between the drip rails of the two cars, causing his death.

Plaintiff brings this action to recover damages for causing her intestate's death; claiming that it was due to the negligence of defendant in maintaining said tongue switch in a defective condition, and also in the employment of said Thomas Roddy, who, she claims, was an incompetent servant. On the trial, plaintiff adduced evidence tending to show that this tongue switch was in bad condition, in that the tongue of the switch was worn down to a point below the level of the rail, and that the pin holding one end of the tongue was so loose that a wagon running over the switch, or any striking of the rail by a car, would jar the tongue from one side to the other, so as to open the switch, and that this alleged defective condition had existed for six months prior to the accident. Defendant introduced evidence tending to show that the switch was in good condition, and that there were no such defects in it as plaintiff claimed; and the switch itself was produced in court for inspection, and it was shown that it was in the same condition as when plaintiff's intestate was killed, and that no repairs had been made on it since that time. Defendant further proved that the practice as to blocking this switch was as follows:

"In case of blocking a switch, if the block was out of the switch, we would go in, or send some one, to get Joe (deceased) to get the block ready; and he would go out, and put it in the switch. Sometimes he would put a block of iron in it, which was a nut. If he didn't have a nut, he would put a block of wood in it. If it was not a block of wood, we would put a piece of rubber in it. But it was invariably a block of iron—a large nut—which was put into that switch. He [deceased] did the blocking. Sometimes a block would remain there for a week,—for a month, sometimes; a block of iron. Other times it would be lost, by the conductor taking it, and forgetting to put it back in the open switch. When it was discovered that the block was not in the switch, they went to Joe, and Joe brought the block there, and placed one in place of the one that had been lost or went astray."

It was also testified to by Superintendent Roddy that on the evening before the accident the switch was blocked, and that he drove over it on the morning of the accident, and that it was in perfect condition. It further appeared that, when a conductor wanted to run a car from the car track into the car house, it was his "duty to get off the back of his car, and go to the front, where the switch is, and take the block of wood, turn the switch, and tell the driver to drive into the car house; after the car has passed over the switch, to turn the switch back to its proper place, and place the block there again, where he had taken it out." It was further shown that deceased had received positive orders from the superintendent to take all cars that needed repairing into the car shop, and repair them there, so that "there would be no danger of accidents."

On the question of the alleged negligence of the defendant in employing an incompetent servant, it was shown by a witness for the plaintiff that the young man, Thomas Roddy, who was driving the car No. 40 at the time it took the switch, was about 17 or 18 years old; that he had been employed around the depot about 10 years, and had been driving cars around there for 3 or 4 years before the accident; that he also acted as tow boy, drove cars down to the shop, and brought horses from the stable. And this witness further testified:

"I have seen Roddy transfer these cars from one track to the other, as he was doing this time, probably a hundred times. I have seen Van Sickle [deceased] working around there while Roddy was doing this work of which I have spoken, frequently."

At the close of all the evidence a motion to dismiss the complaint was granted by the learned trial judge, on the ground that there was no proof that the switch was closed when the car left the track, and on the further ground that, if the switch was defective, it was apparent to any one who worked on the premises, and that the deceased assumed the risk; and on the ground that the driver was not incompetent, and, even if he was incompetent, it was known to the deceased, and he assumed the risk of working in the neighborhood. The learned counsel for the plaintiff asked to go to the jury on the questions of contributory negligence and negligence of the defendant, and excepted to the refusal to submit the case to the jury, and the exceptions taken were directed to be heard in the first instance at the general term. This case is now before us on those exceptions.

After a careful examination of this case, we are of the opinion that plaintiff failed to sustain her cause of action. It was her duty to show, affirmatively, not alone the freedom of deceased from contributory negligence, but also that his death was due solely to the negligence of the defendant; and, in default of her so doing, defendant was entitled to a dismissal of the complaint. Rose v. Railroad Co., 58 N. Y. 217, 222. It is plain that the collision of the cars which caused the death of plaintiff's intestate was due to one of two causes,—either, firstly, that the switch in question was left open through the negligence of the deceased, or some other em-

ployé of the defendant; or, secondly, that at the time of the accident the switch was closed, and that by reason of its defective condition it was opened by the passage of the car, and the collision resulted which caused the death of plaintiff's intestate. There is no evidence whatever that this switch was closed at the time of the happening of the accident, even though it was not blocked; and a verdict based on the claim of the plaintiff that the collision of the cars was due only to the defective condition of the switch, and to its being opened by the jar of the car, would necessarily be based on speculation. The evidence is plain, clear, and uncontradicted that deceased was in the habit of providing the block or iron nut with which to block the switch, and that when one was lost or mislaid he was applied to, and furnished another, and that it was the duty of the conductor taking a car into the car hor ie to unblock and open the switch, and then, after his car had passed over the switch, to close and again block it. There is nothing to show but that this switch was left open by some conductor after taking a car into the car house. For aught that appears to the contrary in the evidence, it is just as likely that the switch was left open as that it was jarred open. If left open, then it was clearly negligence on the part of a fellow servant, and in that event defendant would not be liable. To have submitted this case to the jury on the contention of the plaintiff that the switch was jarred open, in the absence of any evidence that it was closed before the car approached it, would simply call upon the jury to conjecture what the real situation was.

But even if we conceded, for the sake of the argument, that the death of plaintiff's intestate was due solely to the defective condition of the switch, or that it was due in part to that cause and in part to the incompetency of Roddy, the driver of the car, we still fail to see how plaintiff could be entitled to recover. Deceased was an old employé of the defendant, a railroad mechanic, and thoroughly familiar with, and constantly working about, this switch, and also equally familiar with Roddy and his method of doing the work he was called upon to perform. If, as claimed by plaintiff, this switch was defective, none knew it better than deceased; and there is no pretense that he ever complained of its condition as unsafe or dangerous, or of Roddy as an incompetent or negligent servant. Under those circumstances, deceased must be deemed to have voluntarily assumed any risks resulting from the use of the switch or the employment of Roddy. Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. 358; Gibson v. Railroad Co., 63 N. Y. 449; Lanning v. Railroad Co., 49 N. Y. 521; Williams v. Railroad Co., 116 N. Y. 628, 22 N. E. 1117; Plunkett v. Donovan (City Ct. Brook.) 12 N. Y. Supp. 454.

The exceptions taken to the admission of evidence at folios 68, 69, and 72 have no merit, and do not call for any discussion.

For the reasons above stated the exceptions of the plaintiff should be overruled, and judgment directed for defendant, with costs.