John Sweeney, Respondent, *v.* Berlin and Jones Envelope Company, Appellant.

A servant accepts the service, subject to the risks incident to it; and where, when he enters into the employment, the machinery and implements used in the master's business are of a certain kind or condition, and the servant knows it, he voluntarily takes the risk resulting from their use, and can make no claim upon the master to furnish other or different safeguards.

A master may carry on his business with an old machine not provided with all the safeguards attached to newer machines; he may discharge a servant employed to run it, who refuses to perform his stipulated service, and a threat to do so is not coercion, which will make the master liable for injuries to the servant resulting from the use of the machine.

(Argued February 5, 1886 ; decided March 2, 1886.)

Appeal from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made May 23, 1884, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for injuries alleged to have been caused by defendant's negligence. Plaintiff was a printer and embosser in defendant's employ, and the negligence complained of was the omission to furnish suitable and safe machinery for the work.

The material facts are stated in the opinion.

*John L. Logan* for appellant. The defendant was not required to provide additional apparatus for greater safety. (*Gibson* v. *E. R. Co.*, 63 N. Y. 452; *DeForest* v. *Jewell,*

88 id. 264.)   Plaintiff having worked upon this machine for six years without injury, and if the treadle had worn smooth the plaintiff must have known it, and having failed to call the attention of any officers of the company to the fact he cannot recover. (*Warner* v. *E. R. R. Co.*, 39 N. Y. 468 ; *Painton* v. *The N. C. R. R.*, 83 id. 7; *Parodi* v. *R. R. Co.*, 15 Rep. 353 ; *Hough* v. *R. R. Co.*, 100 U. S. 213, 225.)   The complaint should have been dismissed upon the ground that the plaintiff was guilty of negligence, and that his injuries were sustained purely by his own negligence.   (*Hart* v. *H. R. Bridge Co.*, 80 N. Y. 622 ; *Painton* v. *The N. C. R. R. Co.*, 83 id. 7.)   It was wholly immaterial whether any " clutch brake " had been placed on the machine or not.   (*Gibson* v. *Erie R. Co.*, 63 N. Y. 452 ;   *DeForest* v. *Jewett*, 88 id. 264.)

*Albertus Perry* for respondent.   The defendant was bound to exercise due care in furnishing a suitable and safe machine for the use of the plaintiff and keeping it in repair.   (*Cone* v *D., L. & W. R. R. Co.*, 81 N. Y. 206 ; *Wright* v. *N. Y. C. R. R. Co.*, 25 id. 562 ; *Laning* v. *N. Y. C. R. R. Co.*, 49 id. 521; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549 ; *Corcoran* v. *Holbrook*, 59 id. 510 ; Cooley on Torts, 559.)   The plaintiff was not guilty of contributory negligence.   (Cooley on Torts, 559 ; *Marsh* v. *Chickering*, 25 Hun, 405 ; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521, 534.)   By the threats of discharge the plaintiff " urged on or coerced " the plaintiff to use the machine, and therefore the plaintiff cannot be regarded as having voluntarily incurred the risk.   (*Gibson* v. *Erie R. R. Co.*, 63 N. Y. 449, 453 ; *Hawley* v. *N. C. R. R. Co.*, 82 id. 370 ; *Kain* v. *Smith*, 25 Hun, 146 ; 89 N. Y. 375.)   There was no undisputed fact in the case upon which the court could adjudge as matter of law that the plaintiff was guilty of contributory negligence.   (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464 ; *Kain* v. *Smith*, 25 Hun, 146 ; 89 N. Y. 375 ; *Hawley* v. *N. C. R. R. Co.*, 82 id. 370 ; *Marsh* v. *Chickering*, 25 Hun, 405.)

DANFORTH, J.   A motion by defendant for a nonsuit was denied, and the plaintiff had a verdict after instructions to the jury, to which, as the case states, no exception was taken by either party.   We have therefore only to inquire whether the evidence justified its submission to the jury, as sufficient in any reasonable view to warrant a recovery.   (*Burke* v. *Witherbee,* 98 N. Y. 562.)   The machine by which the plaintiff was injured was moved by steam over which he had no control, but when necessary, its operations could be held in check by the pressure of his foot upon a pedal.   The process of embossing required that the plate and die should register, or coincide.   To effect that he necessarily placed his hands between them, but before doing so, put his foot upon the pedal and stopped the press; then "all of a sudden," he says, "the cam came around and jolted a little harder than it usually does, and my foot slipped," the machine started, he got one hand out, but the other was caught between the plates and crushed : hence the injury complained of.   By a timely removal of the belt through which power was communicated to the machinery, he could have avoided all danger.   Whether under the circumstances he should have done so, was for the jury to say, and their verdict must be deemed conclusive in his favor upon that point.

To sustain the judgment in other respects the plaintiff alleges negligence on the part of the defendant in not providing a "clutch" or some contrivance other than the pedal to prevent motion in the machine while the operator's hands were exposed to danger.   It is important to notice that no fault was found with the condition of the pedal, or other contrivances, or the management of the engine.   It may very well be that had the surface of the pedal been cut or roughened like a file or rasp, its holding power would have been greater, but there is no evidence that it was ever in that condition, nor but that its surface was smooth or slippery when the plaintiff, five or six years before, entered the employment of the defendant and began to use the machine.   The complaint to the superintendent was not as to the condition or any imperfection of the pedal, but as to its sufficiency.   The plaintiff testified : "I stated" to him

"that the only means of throwing this machine out of gear or stopping it was by putting the foot on that little treadle; then that could not be done unless the cam had got around it; the cam would have to clutch it before you could do that."

So the pleading, and the plaintiff's evidence show that he was directed "to use and operate ' the Isaac Adams press,' which was an old embossing press, having no late or modern improvements for using or operating the same in safety;" that he entered upon the work in question upon belief that it was safe, " but at the same time told the defendant that he thought it required and ought to have an additional apparatus to stop the same and render it perfectly safe and secure, but he was required to proceed with the work without any such change or improvement, although he requested the same to be furnished."

It must be conceded in favor of the plaintiff that the jury would have been authorized to find these facts, and although the complaint does not allege it, there is testimony tending to show that what the plaintiff asked was that a " clutch " be attached to the machine, and that the superintendent referred him to the machinist, who promised to attend to it as soon as he had time. All this, however, was before the work was undertaken, in doing which the accident happened. Upon that occasion the plaintiff says : " I told him it was an ugly job to work on, and he told me to go ahead with it and be careful, and if I did not care about doing it, I could get out; that there were plenty of other people waiting for employment; that there were men coming in there every day looking for it; I asked him at different times to have it improved. I asked him if he would not have the press improved by having a brake put on it. He told me to go on, and if I did not, that there were plenty waiting for the job; I believe then I asked him about having the press repaired, having the improvements put on it, and he referred me to the machinist; I went to the machinist and he said that he would do all this that I explained to him about having the press improved, that he would do it when he had time."

It is evident that this is not a case where the machine by means of which the business was carried on was temporarily out of repair, as in *Clarke* v. *Holmes* (7 Hurl. & N. 937), or *Kain* v. *Smith* (89 N. Y. 375), or where the defect exposed the servant to any latent extraordinary danger, but at most one where the employer failed to discard a machine, or part of a machine, and supply its place with something different, and, in the opinion of the plaintiff, something safer. He was under no obligation to do so. The machine was safe in any view of the evidence, so long as the pedal was pressed by the operator. It was not automatic; neither was the proposed substitute. Each required the attention of an intelligent actor, and the real condition and efficacy of the one in use was not concealed from or unknown to the servant. He knew as much about it, and the risk attending its use as the master. The defendant could not be required to provide himself with other machinery or with new appliances, nor to elect between the expense of so doing, and the imposition of damages for injuries resulting to servants from the mere use of an older or different pattern. In the absence of defective construction, or of negligence or want of care in the reparation of machinery furnished by him, the master incurs no liability for injuries arising from its use. The general rule is that the servant accepts the service, subject to the risks incidental to it, and where the machinery and implements of the employer's business are at that time of a certain kind or condition, and the servant knows it, he can make no claim upon the master to furnish other or different safeguards; *De Forest* v. *Jewett* (88 N. Y. 264), where a car-coupler stepped into a sluice in defendant's yard and was run over; *Hayden* v. *Smithville Manfg. Co.* (29 Conn. 548), where an employe in a mill received an injury to his hand by being caught in the gearing of a spring frame. In *Gibson* v. *Erie Railway Co.* (63 N. Y. 449), the last case is cited with approval, and the rule applied where an employe was killed by a projecting roof. Under such circumstances, the servant is regarded as voluntarily taking the risks resulting from the use of the machinery, unless, as is said, the master by urging

on the servant, or coercing him into danger, or in some other way, directly contributes to the injury, or assumes the risk. *Kain* v. *Smith* (*supra*), and *Hawley* v. *Northern Central Railway Co.* (82 N. Y. 370), cited by respondent, went upon that ground, and although in one the tool was defective, and in the other, the road-bed out of repair, negligence was not imputed to the servant. This exception is relied upon by the respondent. We think the evidence does not bring the defendant within it. If the defect had been in the pedal and a promise made to repair that, and yet directions given for its use, it might be otherwise, but here the promise, if there was any, concerned a new appliance, not attached to that particular machine, nor to any machines of that make. The "Adams machines," as the plaintiff's witnesses proved, were uniformly furnished with the pedal. A clutch had never been seen on one. They were for different purposes. The pedal was to stop the machine; the clutch was to put the machine in motion. But we think there was no promise made to the plaintiff, nor inducement offered him to take the risk. It cannot be said that there was any connection between the conversations above set forth, and the continuance of the plaintiff in the defendant's employment. Nor does the complaint allege any. On the contrary, it alleges a simple request "that the change or improvement be made," not a promise or suggestion that it should be. There was no direction by the master, nor reliance upon the judgment of a superior officer. It is plain that the danger, to the knowledge of the plaintiff, was inherent in the use of the machine, and to the work itself; the peril did not grow out of extrinsic causes or circumstances which could not be discovered by the use of ordinary precaution, nor to a condition of things different from those existing at the beginning of the service. It was part of the plaintiff's engagement that the master's work should be performed in the usual course and way of business. The work which the servant was called upon to do at the time in question, was not of a different character from that which he originally undertook; and the machine upon which it was to be done was one then in use. No new duty or species of labor was

imposed upon him, nor was he required to work a machine with which he was not familiar. He was simply called upon to do that for which he was engaged, and the doing of which formed the consideration of his employment. To say that the master shall be liable to the servant in such a case is to say that he shall not have the benefit of the labor for which he contracted. Such is not the law. The defendant might, if he chose, carry on his business with an old, rather than a new machine, and could not be required to keep in his employ a servant who would not run it. He might, therefore, call upon the servant to perform his stipulated service, and discharge him if it was withheld. A threat to do so is not coercion. Here there was nothing more. Under such circumstances, there is no ground for charging the defendant with negligence, or throwing upon it a risk assumed by the plaintiff when he took employment. While it is difficult to see how the accident could have occurred, except from the inattention of the plaintiff, that question was for the jury, but because the evidence in no aspect discloses negligence or failure of duty on the part of the defendant, we think the case was improperly submitted to them as one in which the plaintiff might recover.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.