## DETROIT CRUDE-OIL CO. v. GRABLE.

(Circuit Court of Appeals, Sixth Circuit. March 31, 1899.)

### No. 623.

1. TRIAL—DIRECTION OF VERDICT—WAIVER OF ERROR.
   Error in refusing to direct a verdict for defendant, on his motion, at the close of plaintiff's evidence, is waived, where defendant proceeds with the case, and gives evidence on his part.

2. SAME—RIGHT TO HAVE VERDICT DIRECTED.
   Refusal to direct a verdict for defendant at close of plaintiff's case cannot be assigned as error.

3. SAME—MOTION—REQUEST FOR INSTRUCTIONS.
   A request for a charge that, under the evidence, the verdict must be for defendant, is equivalent to a motion to direct a verdict.

4. SAME—AUTHORITY TO DIRECT VERDICT.
   Where the trial judge is satisfied, upon the evidence, that plaintiff is not entitled to recover, and that a verdict, if rendered for plaintiff, should be set aside, the jury may be directed to find for defendant.

5. MASTER AND SERVANT—ASSUMPTION OF RISK—MACHINERY.
   The rim of a fly wheel was fastened on by bolts that projected towards the engine from 1½ to 3 inches. Between the wheel and the engine block there was a water-pipe line connected with the engine pump. This line was only a half inch from the longest projecting bolt, and when the pump was in operation it vibrated. *Held,* that an engineer accepting employment under such conditions, and remaining in service without reliance on any promise of the master to remove the cause of danger, assumed the risk of the bolts catching the pipe and breaking it, and throwing part of it against him, although he did not anticipate that such an event might result from the situation of things.

6. SAME—PROMISE TO REPAIR DEFECTS.
   A master is liable for an injury to a servant, resulting from an obvious defect and known danger, where the servant relied on an express or implied promise by the master to make repairs, for such time as would be

reasonably required to repair the defect, but no longer; and, in the event of an injury during such time, the servant could recover therefor.

7. SAME—KNOWLEDGE OF DEFECT.

Where the knowledge and the means of knowledge of the servant in respect to a patent defect are equal or superior to those of the master, the servant cannot recover for injuries resulting from such defect, where there is no question of the intricate character of the machinery or the imperfect intelligence of the servant involved.

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

This suit was instituted in the court of common pleas of Wood county, Ohio, and removed, on application of plaintiff in error, into the circuit court of the United States for the Western division of the Northern district of Ohio. The plaintiff in error is a corporation engaged in the business of leasing land, and sinking and working oil wells thereon. The action was brought to recover damages for a personal injury sustained by the defendant in error while in the service of the plaintiff in error. He was employed in June, 1895, and continued in the same work until October 23, 1896, when the injury was received,—a period of 14 months. During this entire time the defendant in error was engaged in operating, and had charge of, an engine used in pumping oil from oil wells; the engine in question being at well No. 9. He was 26 years old, and was an experienced engineer; having worked (though not continuously) as engineer for about 12 years. He says he considered himself qualified to properly operate such an engine as he was handling. Such minor repairs as were needed from time to time were made by him. The engine was situated in an engine house, and this, with all the machinery connected with it, was, at the time of the accident, in the same condition as when the defendant in error entered into the service of the master, and had been in such condition during the entire time of his service. What is called the "fly wheel" had a balance or outer rim, attached to it with bolts, which extended through, beyond the outer rim of the wheel, towards the engine block. There were three of such bolts, varying in length from 1½ to 3 inches, all projecting, as stated, beyond the rim of the wheel, and towards the engine block. Between this fly wheel and the engine block there was a water-pipe line, placed along the floor, and extending from a well in the rear of the engine house between the engine block and the fly wheel, connecting with what is called a "union," and extending from that union to the pump; being screwed into the water pump at the engine head. Two or three days previous to the accident, the engineer had himself uncoupled this water-pipe line at the union, for some purpose, and coupled it up again. This line was so placed that it extended along close to the fly wheel, and, as exact measurements made after the accident showed, was within about half an inch of the longest projecting bolt of the outer rim of the fly wheel when revolving. The proof also showed that, when the pump was working, this water pipe would vibrate, though this vibration was very slight, if at all, in a lateral direction. Just how the accident happened was a disputed question, and was left in some uncertainty by the evidence. The theory of the defendant in error was and is that, the machinery being in operation, the projecting bolts on the outer rim of the fly wheel caught this pipe, jerked it loose from its fastenings, breaking it, and that a part of it, thrown by the fly wheel, struck the plaintiff. His jaw was broken in two places, and a severe injury sustained. The pipe was undoubtedly found uncoupled at the union after the accident, and a part of it wound around the shaft; indicating that it had been, by great force, driven out of place and broken. What the defendant in error knows or says in regard to the manner in which the accident happened may be stated in his own language as follows: "Well, I went to my place at noon to start up, and pump there in the afternoon; and I fired up, and got up steam on the boiler, and turned it down to the engine, and went down and started my engine. Well, I left the top pet cock open, always, to see when it started; and the pump started off in good shape; and I shut that up, and started around: and the steam was coming up, and the engine was running a little faster than I

wanted it to, and I took hold of the throttle and checked the engine down; and, just as I took my hand off the throttle, it hit me, and— The Court: What hit you? A. The water line. * * * Q. Do you know how you were injured? A. Well, I know I was injured while I was standing right at the engine, even with the throttle wheel. I was checking the engine down. I did not notice any displacement of any portion of the water-line pipe, or balance of the machinery. I was starting the pump. It was twelve o'clock when I got there, and I fired up the boilers, and the water was low, and I got up steam. The engine was running a little faster than I wanted it to run, and I started around to check it down; and, just as I took my hand off, something happened, and struck me. It was done so quick I couldn't see. Q. Did you know yourself what had happened? A. I could not say, exactly." The foregoing, taken from different parts of his testimony, is practically all that is said by him upon this subject.

Everything connected with the fly wheel and the water-pipe line, and their situation with reference to each other, were, as the defendant in error admits, entirely familiar to him, and had been during the time he had been in the master's service. He says he called the attention of the superintendent of the company to the danger of the projecting bolts on two different occasions,— first, when, or very soon after, he entered upon this particular work, and also at a subsequent time, when he received an injury in the finger from the projecting bolts. He does not fix, or undertake to fix, the date of the second conversation, otherwise than to say that it was at the time of the injury to the finger. The superintendent, Modisette, does, however, fix the date of this conversation definitely, as being in January, 1896, but denies any previous conversation upon the same subject as testified to by defendant in error. The defendant in error says that he requested the superintendent to furnish suitable bolts for fastening the outer rim or balance wheel to the fly wheel, and further says there are bolts, made for that purpose, which would not project, and that the superintendent promised to get other bolts; while the superintendent says he told him that the balance wheel held in place by these bolts should be removed, as it was of no use there any way. There is therefore no conflict as to the time when the last conversation on the subject occurred. In the first conversation the servant claims to have had with the superintendent, he says he mentioned the danger of the bolts on the wheel catching in his clothes and hurting him while the wheel was in motion, and when his finger was subsequently injured that fact was mentioned. Nothing was ever said in regard to the proximity of the water-line pipe to the bolts on the fly wheel when in motion. He undertakes to say he did not think of the danger of the bolts striking the pipe line, and causing such an accident as the one which actually happened, agreeably to his theory of the case.

At the close of the whole evidence, the court overruled a motion to direct a verdict for defendant. The defendant also requested the court to charge the jury that their verdict must be for the defendant; this being in effect a motion to direct a verdict, though not put in that form. Various other special instructions were requested and refused, and certain exceptions taken to the court's charge to the jury. The trial resulted in a verdict and judgment in plaintiff's favor for $1,200, and the case is now before this court on writ of error sued out to review that judgment.

Geo. W. Radford, for plaintiff in error.

Harvey Scribner, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

The refusal of the court, on defendant's motion at the close of the plaintiff's evidence, to direct a verdict for the defendant, is assigned for error, although apparently not relied on in the printed brief. After the motion was overruled the defendant proceeded with the case, and gave evidence on its part, and thereby waived any exception

to a denial of this motion. Railway Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756; Runkle v. Burnham, 153 U. S. 216, 14 Sup. Ct. 837; Wilson v. Live-Stock Co., 153 U. S. 39, 14 Sup. Ct. 768. Moreover, the refusal to direct a verdict for the defendant at the close of the plaintiff's evidence, and when the defendant has not rested his case, cannot be assigned for error in this court. Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591. The court also denied the defendant's motion at the close of the whole evidence to direct a verdict for the defendant, to which exception was duly taken; and, although the argument in this court has been directed mainly to the court's action in that respect, yet, curiously enough, the court's refusal to grant the motion is not specifically assigned for error. The court also refused the defendant's first request, which was in this language: "Under the evidence in this case, the verdict of the jury must be for the defendant." This request must be regarded as in all respects equivalent to a motion to direct a verdict, for it could have no other purpose or meaning, and we accordingly so treat it.

The first question with which we deal, then, is raised by the court's refusal to grant defendant's request to direct a verdict; for this is assigned for error. In determining this question, we take it for granted (but without deciding) that the accident was caused and the injury resulted as the defendant in error insists. The rim was bolted to the fly wheel to correct a loss of balance after it had been in operation, and presumably after the water-line pipe had been put down. In this view, the negligence would be in placing in position and leaving the projecting bolts, which were dangerously near the line pipe when the fly wheel was in rapid motion. Accordingly the bolts are chiefly complained of as causing the accident. But it is not material whether the accident must be attributed to the projecting bolts, or the position in which the line pipe was suffered to remain after the bolts were attached, or to both. The existing situation was, as we have stated, just as it had been when the servant entered upon the particular employment, 14 months before. The projecting bolts, the position of the line pipe in relation to the fly wheel, such vibration as there was in the water line with the engine working and the wheel revolving, were conditions well known to the servant, as he admits. He was an experienced engineer. The defects and conditions were patently obvious, and the danger apparent to one of ordinary intelligence, and still more to a person of this servant's skill, experience, and long familiarity with this situation and machinery. The rules applicable to the relation of master and servant, so far as they affect the question now to be determined, may be briefly stated. The well-understood general rule is that the master is bound to use due and reasonable care to furnish the servant with a safe place to work, and with safe and sound machinery, appliances, and instrumentalities for use in the service. The servant, on his part, assumes the ordinary risks of the business upon which he enters, so far as the risks are known to him, or should be known by a person of ordinary capacity in the exercise of reasonable care; and this, whether the business is a dangerous one or not. And, notwithstanding the general rule requiring the master to furnish a safe working place and safe instru-

mentalities, the servant, in addition to the ordinary perils incident to the business, assumes the risks arising from obvious, patent defects in the things which he uses, and which are known, or should be known, to him. Bunt v. Mining Co., 138 U. S. 483, 11 Sup. Ct. 464; Southern Pac. Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530; Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298; Tuttle v. Railway Co., 122 U. S. 189, 7 Sup. Ct. 1166; Dillon v. Railway Co., 3 Dill. 319, 7 Fed. Cas. 718 (No. 3,916); Southern Pac. Co. v. Johnson, 16 C. C. A. 317, 69 Fed. 559; Railway Co. v. Rogers, 6 C. C. A. 403, 57 Fed. 378; Shear. & R. Neg. (5th Ed.) § 185; Whart. Neg. § 214; Smith, Neg. (Whittaker's Ed.) 133, 396; 14 Am. & Eng. Enc. Law, 845, 853, and illustrative cases.

In the very late case of Railway Co. v. Archibald, 170 U. S. 673, 18 Sup. Ct. 777, the supreme court of the United States approved the rule as declared in Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573, in the following language:

"It is, as a general rule, true that a servant entering into employment which is hazardous assumes the usual risks of the service, and those which are apparent to ordinary observation; and, when he accepts or continues in the service with knowledge of the character of structures from which injury may be apprehended, he also assumes the hazards incident to the situation."

In Mining Co. v. Davis, 90 Tenn. 711, 18 S. W. 387, the deceased was engaged in firing a ventilation furnace in a coal mine, and was suffocated by smoke, caused by the burning of certain wooden buildings, viz. an engine house, oil house, and shed, situated at and near the entrance of the main entry to the mine. The entry was the intake air passage for the mine. The furnace was situated 150 feet from the terminus of the entry, which was the only way of escape from the furnace. The deceased servant exercised general supervision over the entry and buildings, and had entered upon the employment with full knowledge of the situation. It was adjudged that the company was not liable for the servant's death, upon the assumption that the buildings were negligently located and improperly constructed; it appearing that such buildings were in use by well-regulated companies. The supreme court of Tennessee, speaking through Judge Lurton (now one of the circuit judges of this court), after disposing of other points in the case, said:

"But, aside from all this, Davis was an old miner, thoroughly acquainted with this mine, and aware of the character and location of these buildings. With all his experience and knowledge, he must be taken to have willingly engaged in the service of this company, and to have taken upon himself the risks incident to these buildings. Being in charge of the ventilation of this mine, he was peculiarly aware of the effect of an intake of smoke resulting from the burning of these buildings. He was necessarily aware that this smoke would only reach him after permeating and filling all the passages and chambers of the mine and that his escape would be then cut off. This danger, while a slight one, was, in the nature of things, more apparent to him than any other servant of the company. His honor properly charged the jury upon the effect of his knowledge, and we must assume that the judgment is not predicated upon any negligence in this regard."

See, to the same effect, Railroad Co. v. Handman, 13 Lea, 425; Railroad Co. v. Gower, 85 Tenn. 465, 3 S. W. 824; Crown v. Orr,

140 N. Y. 450, 35 N. E. 648; Kennedy v. Railway Co., 145 N. Y. 288, 39 N. E. 956.

An exception to the rule of exemption or immunity of the master from liability under such circumstances arises when the master expressly or impliedly promises or assures the servant that the defect shall be remedied, or the danger removed. During the running of such a promise, the servant may rely upon the master's promise or assurance, and recover in case of an accident resulting from the defect, although obvious, if the claim to damage is otherwise good. This liability of the master in consequence of a promise or assurance continues only for such period of time as might reasonably be allowed or required to remedy the defect or for removal of the danger. "After the prescribed period has elapsed without change, or if the master has refused to remedy the defect, the servant cannot rely upon his expectation of a remedy as an excuse for remaining, whatever rights he may have upon other grounds; and in many cases it has been held that he 'assumed the risk.'" Shear. & R. Neg. § 215. Substantially the same rule was declared in Hough v. Railway Co., 100 U. S. 225. In Smith, Neg. (Whittaker's Ed.) p. 136, what may be regarded as the English rule is thus declared:

"If the master has expressly or impliedly promised to repair a defect, then, if an accident happens while such promise is running, the servant can recover; or, if the servant continues in the service in the reasonable expectation that the repairs will be effected, he can recover. If the promise is not performed in a reasonable time, and the servant continues in the employment, an inference arises of new terms having been agreed upon, and the servant cannot recover. The reason of this is said to be (Clarke v. Holmes, 7 Hurl. & N. 937) that there is contributory negligence on the part of the servant; but it is suggested in Shear. & R. Neg. § 97, that the true ground is that the servant has waived the objection, and induced the master to suppose that it is waived, or, as we are inclined to say, the servant has renewed the service, accepting the risk."

In Whart. Neg. § 220, the doctrine upon the subject is thus laid down:

"It has been further argued that a servant does not, by remaining in his master's employ with knowledge of defects in machinery he is obliged to use, assume the risks attendant on the use of such machinery, if he has notified the employer of such defects, or protested against them, in such a way as to induce a confidence that they will be remedied; such confidence being based on the master's engagements, either express or implied. The only ground on which the exception before us can be justified is that in the ordinary course of events the employé, supposing the employer has righted matters, goes on with his work without noticing the continuance of the defect. But this reasoning does not apply, as we have seen, to cases where the employé sees that the defect has not been remedied, and yet intelligently and deliberately continues to expose himself to it. In such case, on the principles heretofore announced, the employer's liability in this form of action ceases. He may be liable for breach of promise, but the casual connection between his negligence and the injury is broken by the intermediate voluntary assumption of the risk by the employé."

In Gowen v. Harley, 12 U. S. App. 574, 6 C. C. A. 190, and 56 Fed. 973, the circuit court of appeals for the Eighth circuit, through Sanborn, Circuit Judge, declared the general rule and the exception in language as follows:

"A person who is of age, and of ordinary capacity, assumes the usual risks and dangers of the employment upon which he enters, so far as they are known to him, and so far as they would have been known to a reasonably prudent person, under like circumstances, by the exercise of ordinary care and foresight. One of the usual risks he thus assumes is the danger from the negligence of a fellow servant who is engaged with him in a common employment in the service of the same master. Railroad Co. v. Baugh, 13 Sup. Ct. 914. To the last rule there is this exception: If a servant, who is aware of a defect in the instruments with which he is furnished, notifies the master of such defect, and is induced, by the promise of the latter to remedy it, to remain in the service, he does not thereafter assume the risk from such defect, until after the master has had a reasonable time to repair it, unless the defect renders the service so imminently dangerous that no prudent person would continue in it. Hough v. Railway Co., 100 U. S. 213, 225; Railroad Co. v. Young, 1 C. C. A. 428, 49 Fed. 723; Greene v. Railway Co., 31 Minn. 248, 17 N. W. 378; Railway Co. v. Watson, 114 Ind. 20, 27, 14 N. E. 721, and 15 N. E. 824."

See, also, District of Columbia v. McElligott, 117 U. S. 621, 6 Sup. Ct. 884; Parody v. Railway Co., 15 Fed. 205; 14 Am. & Eng. Enc. Law, 815, and cases there cited.

Among recent cases in accord with those already cited, as to the effect of a promise to repair, and the exception created during the running of such a promise, we may mention the following: Oil Co. v. Helmick, 148 Ind. 459, 47 N. E. 14; Carriage Co. v. Potter (Ind. Sup.) 52 N. E. 209; Trotter v. Furniture Co., 47 S. W. 425, 101 Tenn. 380; Donley v. Dougherty, 174 Ill. 582, 51 N. E. 714; Steel Co. v. Mann, 170 Ill. 200, 48 N. E. 417.

In view of the undisputed facts of this case, and the established rules applicable to such facts, the proper disposition of this question would seem to require no elaborate discussion. There is obviously no special ground in this case on which to base or claim an exception to the general rule under which the risk of a patent defect is assumed. The interval of time between the date when the servant claims assurance was given that the projecting bolts would be removed and date of the accident was such that there could clearly be no claim to an exception on that ground. Indeed, plaintiff's counsel do not insist that there is. On the contrary, it is conceded, or, if not conceded, it is too evident to be denied, that the case is not within the exception created by a promise to repair. The contention by which it is sought to sustain the judgment of the court below is that the servant "did not anticipate being hurt in the way he was." It is said that the danger of this character of accident was not anticipated, and the risk of it not, therefore, assumed. It is not insisted that the servant could recover for injury received by his clothes being caught by the bolts on the revolving wheel; being aware of that danger, and having complained of it to the master. But, the position of the water-line pipe and the revolving wheel being visible and patent, such danger as existed on account of this situation was just as obvious to, and as easily comprehended by, the servant as the master. The duties of the servant brought him in daily contact with the machinery, and furnished him a constant opportunity to inspect the same. His means of knowledge were evidently superior to those of the master. Notwithstanding that the defect was open,

patent, and constant, and the servant's means of knowledge not only equal, but superior, to those of the master, defendant in error is forced into the dilemma of maintaining that the danger of such a defect was one which the master was bound to anticipate, while the servant was not. This contention is evidently unsound, as will be recognized upon its simple statement, without more. The servant was a mature man, and a skilled engineer, whose duty brought the patent conditions and dangers constantly under his notice, and during a long service. Under such circumstances, if the servant is not bound to anticipate and appreciate the danger, no grounds can be suggested on which the master is required to do so. If the knowledge and means of knowledge of the servant in respect to a patent defect are equal or superior to those of the master, there can be no recovery,—certainly so in the ordinary case. Railroad Co. v. Handman, 13 Lea, 430; Ogden v. Rummens, 3 Fost. & F. 751; Dynen v. Leach, 26 Law J. Exch. 221; Railway Co. v. Gann, 47 S. W. 493, 101 Tenn. 257. In Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, although the case turned on another point, the court apparently recognized this general rule. And see, to same effect, Southern Pac. Co. v. Seley, 152 U. S. 152, 14 Sup. Ct. 530, approving Sweeney v. Engraving Co., 101 N. Y. 520, 524, 5 N. E. 358, in which it was said of the servant, "He knew as much about it, and the risk attending its use, as the master." See, also, Steel Co. v. Mann, 170 Ill. 200, 48 N. E. 417, and Railroad Co. v. McDade, 135 U. S. 570, 10 Sup. Ct. 1044. It will be observed that the rule, as thus stated and applied, proceeds upon the ground that the defect is open, and the danger one reasonably to be apprehended, and the means of knowledge equal; and it is not necessary, for the purpose of this case, to make any broader statement of the rule, for the conditions here met with give rise to no intricate question of mechanics, any imperfect intelligence on the part of the servant, or other ground for exception. With the rule in a case of latent defects, we here have no concern. It must not be forgotten that when the defect is patent, and the danger apparent, and such as the servant, in the exercise of reasonable prudence, ought to comprehend, with a constant opportunity for inspection, he is bound to know of the danger. He has, in such a case, constructive notice. Southern Pac. Co. v. Seley, 152 U. S. 152, 14 Sup. Ct. 530; Railroad Co. v. McDade, 135 U. S. 570, 10 Sup. Ct. 1044. When the defect is known, and the danger apparent, it is immaterial that the servant does not anticipate the precise extent or character of the injury which may result. None of the authorities upon the subject put the rule of assumption of risks upon the narrow distinction that the servant may know of the danger, but not fully realize the extent or character of the injury which may be sustained. The attempt to introduce such a test or condition would render the rule of the assumption of risks by the servant practically nugatory. That there is no such impracticable element in the rule must be regarded as settled. Railroad Co. v. Kemper, 47 N. E. 214, 147 Ind. 561; Feely v. Cordage Co., 161 Mass. 426, 37 N. E. 368. If the water-pipe line was constructed too close to the fly

wheel, with the bolts attached, the danger that the bolts on the fly wheel would come in contact with the water-line pipe in the operation of the machinery, and thereby cause an accident, was fully as apparent to the servant as the master; and if it might have been anticipated that fragments of the broken bolts on the fly wheel, or of the broken water-line pipe, hurled in different directions, might cause injury, the anticipation of such a result was as much within the power of the servant as the master. In Kohn v. McNulta, 147 U. S. 241, 13 Sup. Ct. 298, the defect complained of by the servant was a lack of deadwoods or bumpers on the freight cars. The court, disposing of this contention, said:

"The intervener was twenty-six years of age. He had been working as a blacksmith for about six years before entering into the employ of the defendant. He had been engaged in this work of coupling cars in the company's yard for over two months before the accident, and was therefore familiar with the tracks and condition of the yard, and not inexperienced in the business. He claims that the Wabash freight cars, which constituted by far the larger number of cars which passed through that yard, had none of those deadwoods or bumpers; but inasmuch as he had in fact seen and coupled cars like the ones that caused the accident, and that more than once, and as the deadwoods were obvious to any one attempting to make the coupling, and the danger from them apparent, it must be held that it was one of the risks which he assumed in entering upon the service."

The principle thus declared is fully applicable to the case in hand.

This case, in its facts, is quite different from Norman v. Railroad Co., 22 U. S. App. 505, 10 C. C. A. 617, and 62 Fed. 727, and James B. Clow & Sons v. Boltz (decided at the present term of this court) 92 Fed. 572. In the former case the testimony in behalf of the injured employé went to show that the injury was without fault on his part, but was due to a defective condition of the floor of the shed where he was working, and that he had worked at the place where he was injured only at rare intervals, and that he was ignorant of the condition of the floor of the shed at that place; the servant expressly denying knowledge of the defects in the floor. The foreman of the master, on the contrary, testifies that the servant had been in that part of the shed several hundred times. It was adjudged that the conflict of testimony between the servant and the foreman as to the servant's knowledge, and his opportunity to know, of the defects, should have been submitted to the jury. In the latter case certain wedges had been introduced in the framework of the truck or car eight days before the accident, in order to meet a demand made by heavy orders, whereby the danger was increased. This change was made with the knowledge and by the direction of the superintendent and managers of the master's works, and against the express protest of the expert core maker in charge of the labor gang, who stated that the use of such wedges was not safe. The injured employé was a common laborer, without mechanical skill, and the car had been operated before the change for a period of six months without injury. At the joint of the two rails on one side of the car track there was a depression in the ground, causing one rail to rest higher than the other, and giving a jolt to the passing car. This defect was known to the servant, but an attempt had been made to remedy it. Under such circum-

stances as these, the court held that it could not be ruled, as a matter of law, that the question of the servant's knowledge of the danger incident to the use of the machinery as changed was not one for the jury.

The conclusion of the whole matter, shortly put, is that the defects and conditions complained of as causing the accident were obvious and known to the servant when he entered into the service, and constantly brought under his notice, in the discharge of his regular duties, during the time of his service. He was a skilled, experienced engineer, with opportunities to observe and understand the danger superior to those of the master. In such a state of the evidence as this, the question was one of law for the court, and not of fact for the jury. The evidence was so conclusive that it would have been the clear duty of the court below, on motion, to set aside the verdict returned in plaintiff's favor; and in such a case it was the court's duty, on motion, to withdraw the case from the consideration of the jury. On substantially such facts as this record discloses, the rule has been thus announced:

"Where, however, an experienced operator, cognizant of the defects of machinery, puts himself within its range, and is injured, he is thereby, in law, supposing the fact to be established, precluded from recovering from the employer." Whart. Neg. § 218.

In Elliott v. Railway Co., 150 U. S. 246, 14 Sup. Ct. 85, Mr. Justice Brewer, speaking for the court, enunciated the rule as follows:

"It is true that questions of negligence and contributory negligence are ordinarily questions of fact to be passed upon by a jury; yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury, and direct a verdict. Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Railroad Co., 114 U. S. 615, 5 Sup. Ct. 1125; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569; Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835."

And in the later case of Treat Mfg. Co. v. Standard Steel & Iron Co., 157 U. S. 674, 15 Sup. Ct. 718, the supreme court stated the same rule thus:

"But it is well settled that where the trial judge is satisfied, upon the evidence, that the plaintiff is not entitled to recover, and that a verdict, if rendered for plaintiff, must be set aside, the court may instruct the jury to find for the defendant."

Well-considered cases in this court speak the same language. Blount's Adm'x v. Railway Co., 22 U. S. App. 129, 9 C. C. A. 526, and 61 Fed. 375; Railway Co. v. Lowry, 43 U. S. App. 408, 20 C. C. A. 596, and 74 Fed. 463; Railroad Co. v. Cook, 31 U. S. App. 277, 13 C. C. A. 95, and 66 Fed. 115.

Concluding, as we do, that the defendant was entitled to a peremptory instruction in its favor, and this view being decisive of the case as presented in this record, it is not material to decide other questions made and discussed. Reversed and remanded, with a direction to set aside the verdict and grant a new trial.