## CINCINNATI, N. O. & T. P. RY. CO. v. ROBERTSON.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1905.)

### No. 1,401.

1. MASTER AND SERVANT—INJURIES TO SERVANTS—RAILROADS—APPLIANCES—CARE REQUIRED—ASSUMED RISKS.

While a railway company is bound to use reasonable care to provide reasonably safe appliances for their servants to work with and keep the same free from defects, an employé accepting employment about appliances which he knows are not safe, or which are so defective that he must be taken as a matter of law to know its unsafe condition, assumes the risk of injury therefrom.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 583-590.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—PROMISE TO REPAIR—QUESTION FOR JURY.

Plaintiff, an engineer in defendant's employ, used an engine with lubricator tubes unprotected by shields for several months, until one of the tubes broke and injured his hand, when he notified defendant's foreman, and asked him to furnish shields. Plaintiff testified that when he asked for shields, and told the foreman there was none on the engine, he replied, "Well, they must be fixed;" and that he believed the foreman meant that he would supply shields as soon as he reasonably could, and that, acting on such belief, he remained in the service and used the engine without shields for eight days thereafter, when he was injured by the explosion of another tube. *Held*, that whether the statement of the foreman constituted a promise to furnish shields, and whether plaintiff was induced to remain in the defendant's employ and use the engine without shields, was for the jury.

3. SAME—TIME TO REPAIR.

Where plaintiff, a railroad engineer, complained to his foreman of the absence of shields about an oil tube on his engine, and the foreman

promised to furnish shields, without specifying any time, plaintiff was entitled to use the engine without shields without assuming the risk of injury from their absence for a reasonable time to enable defendant to procure and fit them.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 637–644.]

**4. SAME—REASONABLE TIME—QUESTION FOR JURY.**

Where plaintiff, a railroad engineer, complained to his foreman of the absence of oil tube shields on his engine, and the foreman promised to supply shields, without specifying any time, and it appeared that defendant did not make its own engines, but that shields were fitted as a part of the appliances of a complete engine by the makers, and that there was a custom to make repairs on engines in the order of emergency therefor, whether the lapse of 8 or 9 days after shields were promised without supplying them before plaintiff was injured by the explosion of a tube was an unreasonable time, so that plaintiff again assumed the risk of using the engine without shields, was for the jury.

In Error to the Circuit Court of the United States for the Eastern District of Kentucky.

The defendant in error, a locomotive engineer in the service of the railway company, lost an eye through the explosion of one of the glass tubes in the lubricator located in the cab of his engine. There was evidence tending to show that lubricator tubes were liable to explode, and that to prevent injury to the men in the cab it was usual to protect them with metal shields so constructed as to prevent injury from flying fragments of glass, without seriously obstructing the view of the tubes by the engineer. There was also evidence that many engineers, to escape the difficulty of keeping the tubes clean and clear with the shields in use, took them off and cast them aside. When the defendant in error took his engine he found that his lubricator was without any such shields. He took it in that condition, and ran the engine without protest until December 23, 1900, when one of the register glasses burst and slightly injured his hand.

Touching an alleged promise to supply him with shields, made on December 24th, the plaintiff testified as follows: "Q. After that breaking, tell what conversation took place between you and the foreman of engines, Mr. Brown? A. When it broke and cut my hand I put in another one in the engine. I think I met Mr. Brown, as well as I remember, between the storeroom and the roundhouse, and I asked him to put shields on this lubricator. He asked me where were the shields that come in the engine, and I told him I didn't know; that there were none on it when I was assigned to the engine. He says, 'Have you looked in the box for them?' and I told him I had, and that there wasn't any in there, and hadn't been any since I had been on the engine. I told him I wanted shields on the engine, and he said, 'Well, they must be fixed.' That was about the sum of the conversation between us. Q. Under the rules and regulations of the company and their method of doing business and making repairs at Somerset, how long did it take to do this work? (Objected to. Objections sustained, to which plaintiff excepts.) Q. When a matter of that kind is brought to the attention of the roundhouse foreman and the engineer foreman up there, what is the method and manner of looking after these matters? (Objected to. Objection sustained, to which plaintiff excepts.) Q. What are the rules and regulations in that respect? A. The foreman must see that this repairing is done, and if he can't do it right away he must as soon as he can get to it. Q. What is the rule as to the custom and method of doing this work, and how long does it take usually, in the management of the company's business? A. The custom is— There are several methods; there are 35 to 40 engines a day coming in there, and if one is so disabled that it can't go out again it must be fixed at once, and as soon as they can get this work off their hands they go and do this other repairing. Q. Did you rely on what the engine foreman said to you up there in regard to these shields? A. Yes, sir. Q. Did you believe he would do what he said he would? A. Yes, I did. Q. Had you before that

time made such reports to him and did he comply with them according to the custom and management of the business up there? A. Yes, sir."

The plaintiff admitted that on December 26th, 28th, and 29th he took out his engine knowing the shields had not been replaced as promised. On the morning of January 2d, while preparing his engine to go out again, one of his lubricator tubes burst, destroying an eye. There was evidence contradicting the testimony of the plaintiff in all material matters bearing upon the alleged promise to put on shields. At the close of all of the evidence the railway company asked to. have the jury instructed to find a verdict for the defendant. This was overruled. The plaintiff counted upon negligence in the matter of supplying a defective lubricator glass, and also upon negligence in supplying a lubricator defective in the matter of shields.

The jury were instructed to find for the defendant upon the count upon a defective glass tube. Upon the other questions the trial judge instructed as follows:

"In order that you may find for the plaintiff in this case on that ground it is necessary that you believe from this evidence four things.

"One is that the lubricator was not reasonably safe without the shield around the glass; in other words, that it was a defective lubricator without the shields around the glass.

"Second, you must believe from the evidence that the defendant, the railway company, had failed to exercise reasonable care in providing shields.

"Third, you must believe from the evidence that the defendant's master foreman, Brown, upon complaint being made to him by the plaintiff in regard to the absence of shields, promised and assured him that the shields would be provided.

"Fourth, you must believe from the evidence that at the time of the injury a reasonable time had not elapsed in which the shields could have been provided.

"The reason why it is essential that there should have been a promise or assurance on the part of Brown that this alleged defect would be remedied is that if there had been no such promise the plaintiff would have assumed the risk of the alleged defect because it was obvious the shields were not there and the risk was obvious.

"And the reason why it was essential that a reasonable time had not elapsed for the defendant to comply with the assurance, if it was made, is that after the expiration of such a reasonable time the plaintiff had no longer any right to rely on the promise and must be considered as having assumed the risk.

"These are the facts and the things you must find to exist from the evidence before you can find for the plaintiff; but if you do find them to exist, it will then be your duty to find for the plaintiff, unless you further believe from the evidence that the plaintiff himself failed to exercise reasonable and ordinary care, and that such failure on his part contributed to his injury, so that the injury would not have been sustained had he not been guilty of such failure of care.

"There are three particulars in which under the evidence it is possible that the plaintiff himself was guilty of failure to exercise ordinary care on his part. Of course, it is for you to determine that.

"One particular is in not examining the glass that was put on the lubricator and afterwards exploded before he placed it.

"You will determine from the evidence whether he did examine it before placing it. My recollection is that he did not, but you will determine that question, and if by an examination he could have ascertained the defect in it his failure to examine it was want of due care on his part, such as to defeat his right of recovery in this case.

"Another particular in which it is possible for you to find—of course, you are the judges of that—that there was negligence on the part of the plaintiff. According to this evidence the explosion took place just after the plaintiff had placed the tube in the lubricator, and the defendant claims that it was caused by bad packing and method of turning on the steam. If you believe from the evidence that that was what caused the explosion, and the plaintiff

in so packing and turning on the water and steam failed to exercise care, it will be your duty to find for the defendant.

"Then, lastly, if you believe from the evidence that notwithstanding the promise and assurance (if you believe there was a promise and assurance), that a person of ordinary intelligence, with the plaintiff's experience—that a person of ordinary prudence, with plaintiff's experience with this lubricator—would not have continued to incur any risk that there was without shields, then he was guilty of such contributory negligence as to defeat his right to recover."

There was a verdict and judgment for the plaintiff.

John Galvin, for plaintiff in error.

Robert Harding, for defendant in error.

Before LURTON, Circuit Judge, and THOMPSON and WANTY, District Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The law is that a railway company owes to its employés the duty of using reasonable care to provide them with reasonably safe appliances to do their work, and the same degree of care to keep such appliances in repair and free from defects. There is, however, no duty to provide the latest, safest, or best appliances, but only such as are reasonably safe. Nevertheless, if one accept employment upon, about, or with machinery or appliances which he knows are not safe by reason of defects, or such defect is so obvious as that he must be taken as matter of law to know its unsafe condition, he will be taken to accept the hazards due to such defective appliance as one of the risks of the service, and the employer will not be liable for any injury he may suffer from the danger which thus becomes incidental to the employment.

The plaintiff in the case in hand was an experienced locomotive engineer. He had worked upon engines with and without lubricator shields. When he took the engine assigned him by the defendant company, he knew the lubricator was not protected by shields.

By implication of law he agreed to run an engine which he knew to be defective in the matter of protection against the possible explosion of the lubricator tubes. It was as if he had said: "I will use the lubricator in the condition I find it, and will accept as one of the risks incident to my contract the danger of injury from flying fragments of glass in case the lubricator tubes shall burst, you using due care in their selection." This continued to be the contract of service for eight or nine months. But there came a time when the plaintiff says there was a change of the terms of the contract of service—a time when the risk of danger from unprotected lubricator tubes was no longer a danger incidental to service. On December 23d one of his lubricator tubes burst and injured his hand. This accident seems to have aroused the instinct of self-preservation, for on the day following, when he had taken his engine into the roundhouse, he says that he notified the master foreman of the roundhouse, and asked him to put shields on his lubricator. This foreman might very well have said no. In this event,

if plaintiff had remained in charge of this engine there would have been no change in the terms of his contract of service.

The notice to the company of the defect and the request to remedy it would not have imposed upon the company any liability from a defect which was known to the employé and which the company refused to remedy. The plaintiff's continuance in service would have been under an implied assumption of the risk; for if a master chooses he may use an unsafe or defective appliance, and employés who take or continue service, with such knowledge, engage to work with unsafe and defective tools or appliances, assuming the risk as incident to the contract. Tuttle v. Ry. Co., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114; Sweeney v. Berlin Envelope Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722; Hough v. Ry. Co., 100 U. S. 214, 224, 25 L. Ed. 612; Mining Co. v. Davis, 90 Tenn. 711, 18 S. W. 387; Railroad v. Duffield, 12 Lea (Tenn.) 63, 68, 47 Am. Rep. 319; Detroit Crude Oil Co. v. Grable, 94 Fed. 73, 36 C. C. A. 94; 20 Am. & Eng. Ency. Law, 116, and cases cited.

But the plaintiff's contention was that the defendant's foreman did not refuse to put on shields as requested, but that he agreed to do so, and that in the belief that he would do so he was induced to remain in the service and operate the engine.

The question of whether a promise was made was one of the issues of fact in the case. Plaintiff testified that when he asked for shields, and told Brown, the foreman, that there was none in his box and had been none since he had had the engine, that Brown replied, "Well, they must be fixed." Now, this was not an explicit promise, but plaintiff says he believed Brown meant him to understand that he would, as soon as he reasonably could, supply shields, and that he acted upon this belief, and remained in the service until January 2d, when another tube exploded, with very lamentable results.

Did the plaintiff have the right to regard this as a promise made to induce him to remain in the service? The learned trial judge thought the meaning and intent of the language employed by Brown, when shields were asked for, was a question for the jury, under all the circumstances. In addition to what we have already set out upon this matter in the statement of the case, he, at the conclusion, gave the following:

"I wish to make an addition to my instructions, and that is in regard to the claimed assurance and promise to remedy the defect. The sole evidence on that line is the statement of Robertson that Brown said it must be fixed. In order that you may treat that as a promise, if you believe it was said, you must believe it was a reasonable inference on the part of Robertson that that was a promise to remedy the defect, and that it was made in order to induce him to remain in the employ of the company, and that he relied on it as such, and continued in the employment because of it. If, however, it was a mere expression of opinion that the shields ought to be there, and not a promise and assurance of the character I have referred to, plaintiff cannot recover in the case."

There was, we think, no error in the instruction given, and none in submitting the question to the jury.

The question of whether there was a promise to furnish his

lubricator with shields, and whether plaintiff was induced to re-main in the management of an engine defective in this respect, having been submitted to the jury, we must, in view of the verdict, assume that both of these questions were found for him.

But the right to rely upon the promise to remedy the matter and to continue in the use of the defective appliance without assuming the risk as incident to the contract of service cannot continue be-yond such time as, under all the circumstances, he might expect the promise to be redeemed. If there be undue delay, such as to in-dicate no purpose to supply the shields needed, it could not be said that after the time had passed within which he could reasonably expect the repair to be made that he was continuing to use the dan-gerous appliance in reliance upon a promise which had not been kept. On the other hand, it could not be reasonably contended that one who is induced to remain in the use of a defective tool by a promise that it should be speedily remedied accepts the danger incident to its use while waiting repair. Hence the rule is that, when there has been such a definite promise to repair a defect com-plained of as to reasonably induce the servant to remain in the service, he may recover for any injury caused by such unsafe de-fective tool or appliance which may be sustained within such a time after the promise as, under the circumstances, performance might be reasonably anticipated, unless it should appear that the danger from a continued use pending removal or repair would be so great as to be a reckless exposure to danger and constitute contributory negligence. Hough v. Railway Co., 100 U. S. 214, 225, 25 L. Ed. 612; Dist. of Columbia v. McElligott, 117 U. S. 622, 631, 6 Sup. Ct. 884, 29 L. Ed. 946; Northern P. Rd. Co. v. Babcock, 154 U. S. 190, 200, 14 Sup. Ct. 978, 38 L. Ed. 958; Detroit Oil Co. v. Grable, 94 Fed. 73, 78, 36 C. C. A. 94; Railroad v. Kenley, 92 Tenn. 207, 21 S. W. 326; Trotter v. Furniture Co., 101 Tenn. 257, 47 S. W. 425; McPeck v. Cent. Vt. R. Co., 79 Fed. 591, 25 C. C. A. 110; Stephenson v. Duncan, 73 Wis. 407, 41 N. W. 337, 9 Am. St. Rep. 806; Holmes v. Clark, 7 H. & N. 937.

Thus, if the promise is that the repair shall be made by a definite time, and the time passes without its being made, the employé cannot ordinarily be regarded as remaining in service because of reliance upon a broken promise. Trotter v. Furniture Co., cited above. But when the promise is not to repair within a definite time the question as to the time a servant may reasonably continue in service relying upon an assurance of repair must depend upon the circumstances of each case, and most generally the question is one for the jury. But when there is no conflict as to the facts, and only one inference could reasonably be drawn, the question of what would be a reasonable time during which one might rely upon an assurance of repair may become a question of law for the court. Thus, in McPeck v. Cent. Vt. R. Co., cited above, the promise was that the practice of not giving signals to warn sectionmen at work on the track of the approach of trains should be corrected. It was held that, 20 days having elapsed between the complaint and the injury without any change in the management of its trains, the

plaintiff could not, as matter of law, rely upon the assurance of a change and had reassumed the risk. In the case before us the promise to supply shields was made on December 27th. The injury occurred on January 2d. Thus there had been eight or nine days within which to remedy the defect.

It has been pressed upon us very urgently that at the time of his injury the plaintiff could not reasonably be in the service in reliance upon the assurance of repair made eight days before, and must be regarded as having again assumed any risk incident to unguarded lubricator tubes. This question as to whether the unreasonableness of plaintiff's continued reliance upon the promise of repair after such a lapse of time is one for the jury or the court is not, on the facts of this case, one of easy solution.

The trial judge saw and heard the witnesses, and he thought the matter not so free from controversy as to constitute a mere matter of law. How long might the plaintiff reasonably expect that the promise to him would be carried out? Evidently the answer depends upon a number of circumstances. No time was fixed. The law, therefore, must imply that the "fixing" would be done so soon as it reasonably could, considering the urgency of the matter and the means the company had for supplying shields adapted to the purposes of the case.

The matter was not in its nature like the furnishing of a spike, a nail, a nut, or a common tool. Such articles, we might judicially know, are kept in stock and easily supplied. Delay about such an article would raise a doubt as to the purpose to supply it, and operate as notice that any reliance upon an assurance dependent upon the supplying of such an article was unjustified. But if lubricator shields were kept in stock, the defendant did not show it. The effort of plaintiff to show that they were not kept on hand was defeated by the objection of the defendant itself. An inference from evidence that the company bought its engines and did not build them, and that the shields were in place as a part of the appliances of a complete engine, might justify an inference that shields were not kept on hand, but would have to be ordered from the makers of the engine. If so, a delay of eight or ten days might occur between the promise and its fulfillment, and the plaintiff might not unreasonably continue in reliance upon the assurance that the danger should be removed as soon as such shields could be procured.

Then, again, there was evidence, which we have set out in the statement of the case, of the custom and practice of doing repairs according to their urgency and in their time. We do not, upon the whole, think the trial judge should be reversed for holding there was a case for the jury upon this matter of time.

The question of contributory negligence has been considered. The question as to whether the tube which broke was one put in by the plaintiff the morning of the accident, or one which he had not handled, was one dependent upon credibility of witnesses. Plaintiff denied that he replaced or repacked any tube the morning of his injury. There was evidence that he did, and of negligent

packing, and that the tube which burst was one negligently packed by him that morning. The issue was one for the jury.

The court did not err in refusing to instruct for the railway company, and the judgment is accordingly affirmed.