## WYMAN & GORDON CO. v. POOLE.

(Circuit Court of Appeals, Sixth Circuit. December 3, 1912.)

### No. 2,237.

NEGLIGENCE (§ 136*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY —CONTRIBUTORY NEGLIGENCE.

Evidence considered, in an action by an employé against the master to recover for an injury caused by the dropping of a drop hammer which he was operating, because of defective fastenings, and *held* to justify the trial court in submitting to the jury the questions both of defendant's negligence and of plaintiff's contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Action at law by Henry Poole against the Wyman & Gordon Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. C. Boyle, H. H. McKeehan, and W. B. Stewart, all of Cleveland, Ohio (Squire, Saunders & Dempsey and Hoyt, Dustin, Kelley, McKeehan & Andrewa, all of Cleveland, Ohio, of counsel), for plaintiff in error.

Skiles, Green & Skiles, of Shelby, Ohio, and R. B. & A. G. Newcomb, of Cleveland, Ohio, for defendant in error.

Before KNAPPEN, Circuit Judge, and SATER and SESSIONS, District Judges.

KNAPPEN, Circuit Judge. Plaintiff in error (hereafter called defendant) operated a plant for the manufacture of drop forgings. Defendant in error (hereafter called plaintiff) had charge of the operation of two drop hammers; one a finishing and the other a breakdown hammer. The latter consisted generally of a bed, supporting the lower die, and a hammer, or "ram," operating vertically and carrying the upper die. The hammer was attached to a board, which was gripped between and raised by two friction rolls in the upper works of the machine. The heavy casting containing the upper works was normally attached to two steel uprights by four clamp bolts, provided with springs to take up the jar. The dropping of the hammer was effected by a foot lever, which released the clamp. There was evidence that for some time before the accident two or more of the staybolts were out of place, and that the remaining bolt or bolts were insufficient to keep the machine rigid; that the clamp bolt or jam nut,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one or both, were worn or insufficient, with the result that the clamp, was liable to release the hammer and cause it to descend without action by the operator, thus requiring frequent adjustment of the clamp bolt or nut. Such dropping was called "repeating." There was evidence that plaintiff, shortly before the accident hereafter mentioned, complained to the foreman that the hammer was dangerous and was repeating, was promised that it should be repaired, and directed to continue at work, and that plaintiff continued under that promise.

While plaintiff was engaged in removing "scale" from the lower die, the hammer fell, causing an injury for which verdict and judgment were recovered. There was substantial evidence of defendant's negligence, and its contention to the contrary is foreclosed by the verdict. It was urged that the hammer fell through the action of plaintiff's brother while attempting to adjust the clamp bolt; but this contention was fairly submitted to the jury, and is likewise concluded. The plaintiff's testimony regarding his complaint to the foreman and the latter's promise to repair was sufficient to justify submitting to the jury the question of plaintiff's assumption of risk through a normal and careful operation of the machine. Cincinnati, N. O. & T. P. R. Co. v. Robertson (C. C. A. 6) 139 Fed. 519, 524, 71 C. C. A. 335.

It is strenuously urged, however, that the plaintiff's testimony conclusively shows that the accident was due to his own negligence in placing his arm between the dies, with knowledge that the hammer was liable to repeat; and it may be assumed that, if the testimony conclusively so shows, verdict should have been directed for defendant as requested, notwithstanding an assumption of risk from ordinary operation of the machine. Plaintiff's testimony, giving him the benefit of every fair inference, by way of construction, which might reasonably be drawn from it, as must be done for purpose of motion to direct verdict (Rochford v. Pennsylvania Co. [C. C. A. 6] 174 Fed. 81, 98 C. C. A. 105), tended to show that the lower die was from 32 to 33 inches long; that the scale was about 11 to 12 inches from the front and 4 to 5 inches from the right-hand side of the die; that in loosening the scale he stood from 3 to 5 inches from the treadle, bending over, and reaching in at the right-hand side of the die, with a stick, 12 to 14 inches long, in his right hand, while his left hand held the nozzle of the blow pipe in directing the blast on the scale, plaintiff not supporting himself by or resting any weight on the blow pipe; that he knew the hammer was liable to drop, and that he at no time had his hand or arm, or any portion of his body, under the hammer or between the dies; that while in the position stated he was startled by hearing a rasp or click (which apparently indicated that the hammer was about to fall), and instinctively "made a move to get away"; and that as he made the move "that blast pipe gave, or my foot gave, I can't swear which, but I lunged across the die." The hammer made a cut on the right side of his head, and caught and crushed his right arm from a little below the shoulder to about the middle of the forearm; the hand and lower part of the arm being uninjured.

Defendant contends that plaintiff's negligence is conclusively shown by his failure to prop up the hammer by boards and by the use of a short stick, in place of a 3-foot iron rod which was available. But

the question of negligence in both those respects was for the jury. While it appeared that boards were used to hold up the hammer while dies were being changed, yet if the claim that no part of plaintiff's person was under the hammer is to be accepted, it is clear that we cannot say, as matter of law, that he was negligent either in not propping up the hammer or in not using a longer rod.

Defendant insists, however, that the manner of the accident and the attendant conditions conclusively show that plaintiff could not have been doing what he says he was doing without having some portion of his hand or arm under the hammer just before the accident; and the rule is invoked that testimony contrary to reason or contrary to physical laws cannot support a verdict. Among the decisions of this court which recognize this principle are Pennsylvania Co. v. Whitney, 169 Fed. 572, 576, 95 C. C. A. 70, and Baltimore & Ohio Ry. Co. v. O'Neill, 186 Fed. 13, 15, 108 C. C. A. 115.

In view of plaintiff's testimony that he was made to lunge across the die because startled, and by the "giving" of the blast pipe or of his foot, the facts of the blow on the head and of the crushing of the arm do not conclusively prove that his hand or arm was under the hammer previous to his hearing the warning of the hammer's fall. Indeed, the fact that the hand and lower part of the arm were uninjured lends color to plaintiff's version of the manner of the accident.

Defendant contends, however, that as the hammer in operation makes 50 to 60 strokes per minute, and thus rises and falls in about a second of time (the dies being about $2\frac{1}{2}$ to 3 feet apart), plaintiff could not have fallen under the hammer in the fraction of a second which, defendant says, could only have elapsed between the click and the blow. But not only does this assume that a descent of the hammer, resulting from an insecure clamp, would necessarily be as rapid as when the hammer is released under ordinary operation, but we cannot pronounce it physically impossible that plaintiff, in his bent attitude, should in a fraction of a second so fall as to be struck and caught by the hammer.

It is urged, however, that plaintiff's position in loosening the scale absolutely necessitated the presence of his arm under the hammer. This conclusion is sought to be drawn from testimony that the distance from a perpendicular line drawn upward and from a point 4 to 5 inches from the treadle to the center of the die was 34 inches. Setting to one side the fact that plaintiff's testimony does not necessarily place the scale in the center of the die, it is enough to say that there is no testimony that one could not so stand in the place indicated as to be able to touch the scale with the stick in question without having his arm under the hammer; and we have no data to justify a conclusion that it is a physical impossibility to do so.

We think the court did not err in refusing to direct verdict for defendant. We have not discussed all defendant's assignments. We have, however, considered them all, and are satisfied that no error has been committed to its prejudice.

The judgment of the Circuit Court is accordingly affirmed, with costs.